IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NICOLE REYES, ET AL** | **CIVIL CASE NO.:** |
| | **2:12-cv-02043-HGB-DEK** |
| **PLAINTIFFS** | |
| **VERSUS** | **DISTRICT COURT JUDGE:** |
| | **HELEN C. BERRIGAN** |
| **JULIA PLACE CONDOMINIUMS** | **MAGISTRATE JUDGE:** |
| **HOMEOWNERS ASSOCIATION,** | **DANIEL E. KNOWLES, III** |
| **INC., ET AL** | |
| **DEFENDANTS** | **SECTION "C"** |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Nicole Reyes ("Plaintiff" or "Reyes"), individually and as the representative of two classes, files this motion for partial summary judgment asking this Court to rule that La. R.S. 9:3500 and La. R.S. 9:3501 ("Louisiana's Usury Statutes") apply to the obligation to pay late fees, interest and related charges for late payment of condominium assessments, as charged by Julia Place Condominium Homeowners Association.

Defendants, Julia Place Condominium Homeowners Association ("JPCHA"), Steeg Law, LLC ("Steeg") and Margaret V. Glass ("Glass")(collectively "defendants"), have filed Motions to Dismiss arguing that Louisiana's Usury Statutes do not apply to the late fees and interest charged by condominium associations. Because the Court will necessarily have to resolve this pure issue of law in the context of the defendants' Motion to Dismiss, Reyes seeks a partial summary judgment on that issue, leaving for another day the question of which defendants may be liable for violating the usury statutes, and for how much. If the Louisiana Usury Statutes apply, there can be no question that JPCHA's has violated them because it charges 18% interest, late fees and attorney's fees.

1

# I.

## SUMMARY OF ARGUMENT

As outlined below and in Reyes' response to the defendants' Motions to Dismiss, the Louisiana Usury Statutes apply "to any contract" that does not fall into one of the exceptions delineated therein, not simply to "loans," as the defendants contend. Following the plain language of the statutes, Louisiana courts have recognized the Louisiana Usury Statutes apply to contracts to pay attorneys fees, for weekly news services, for wirelines services, commercial leases, and any number of other services provided on open account. There is simply no basis on which to argue the usury statutes do not apply to an obligation to pay condominium assessments.

Additionally, in *Thrift Funds of Baton Rouge, Inc. v. Jones,* 274 So. 2d 150, 157 (La. 1973), the Louisiana Supreme Court recognized that any charge for late payment constitutes interest for purposes of the usury statutes. ("charges for use of the money--whether denoted as interest, whether capitalized within the face amount of the note, or whether denoted as an 'extension' or 'late' charge--are all 'interest for purposes of determining whether a note is usurious under Civil Code Article 2924.'"). Thus, the late fees charged by JPCHA are subject to usury. The statute cited by the defendants, LSA-R.S. 9:3505, does not apply because this matter does not involve federally related mortgage loans subject to 12 U.S.C. § 1735f-5. It arises out of section 9:3500 and 9:3501, not section 9:3505.

# II.

## STATEMENT OF UNDISPUTED FACTS

On June 29, 2006, Reyes entered into a cash purchase agreement for a condominium unit at Julia Place Condominiums. JPCHA's Condominium Declaration requires the charging of 18% interest for late payments of monthly condominium assessments:

>Assessments, and installments, thereon, paid on or before (10) days after the date when due shall not bear interest, but all sums paid after such period such period shall bear interest at the rate of eighteen (18%) percent per annum from the date when due until paid.[1]

Reyes has been charged interest at 18% per annum for alleged non and/or late payments of condominium assessment/installments/sums as directed by Article XII, paragraph 9 of defendants' Condominium Declaration for at least each of the months of October, November and December 2011; and February, March, April and May of 2012.[2] This fact is undisputed as defendants admit to such charges through their two letters and their ledgers attached to the back of the two letters.

Defendants' further admit in their letters[3] and ledgers that Reyes has been charged "late fees" and/or "late charges"[4] in the amount of $100.00 dollars a month for at least each of the months of October, November and December 2011; and February, March, April and May of 2012 for alleged non-payment and/or late payment of monthly condominium assessments. In fact, defendants acknowledge through their May 14, 2012 letter that such charge is mandated pursuant to JPCHA's Rules and Regulations as amended by defendants:

>The Julia Place Rules and Regulations were amended on May 7, 2009[5] to provide for a **$100 late charge** to be assessed against any owner that **fails to pay their <u>monthly</u> condominium assessments** by the 10th of the month. The late charge is in addition to 18% interest. I have attached

---

[1] *See,* copy of JPCA's Condominium Declaration attached hereto as Exhibit 1, at Article XII, paragraph 9.
[2] *See,* Complaint (Doc.1) at exhibits "A" and "D" attached thereto which consist of two letters (April 17, 2012 and June 12, 2012 written by defendants Steeg and Glass as attorneys on behalf of defendant JPCHA) each with a ledger attached to the backs documenting the usurious interest charges by defendants against Reyes.
[3] *See,* Complaint (Doc. 1) at exhibits "A", "C" and "D" attached thereto.
[4] *See,* Complaint (Doc. 1) at exhibits "A" and "D" which letters refer to the $100.00 charges as "late fees" while the ledgers at the end of the letters refer to them as "late charges". As later discussed, the distinction is immaterial as either classification still renders the charges "interest" pursuant to Louisiana's Usury Laws.
[5] There is a separate issue related to the method in which this late charge was adopted, and whether it can even be properly charged, but that issue is not presently before the Court in this motion.

excerpts of the condominium documents for your review.[6] [emphasis added].

It is undisputed that the ledgers attached to defendants' two letters[7] evidence that Reyes' <u>monthly</u> assessment is $219.13. It is therefore further undisputed that these $100 "late fees" and/or "late charges" against Reyes are at a rate over 40% more than her monthly assessment and as quoted above, "in addition to 18% interest."

In addition to the $100 late fee and 18% interest, Julia Place has also assessed Reyes with attorneys fees, as reflected in her ledger. On February 13, 2012, she was assessed with $210 for attorneys fees without explanation. (Reyes did not receive any letter related to collection efforts until Ms. Glass' April 17th letter). In any event, in February when she supposedly owed only $203.11 after her February 13, 2012 payment, she was assessed with attorneys fees of $210 (103% of the principal debt of $203.10). On May 1st, she had an outstanding balance of $847.47, but on May 9th, she was assessed with additional attorneys fees of $614.10 (72% of the outstanding balance, or 96% if the prior assessment of attorneys fees is omitted). On June 5, 2012, Reyes' balance due was supposedly $1,360.82. On June 8th, she was assessed with additional attorneys fees of $461.70 (34% of the outstanding balance, or 86% if the prior assessment of attorneys fees are omitted).

On January 10, 2012, after timely payment of her monthly assessment, Reyes had a balance of $100.98, which represented a disputed late fee. As of June 11, 2012, her total balance was $1,951.36. Of that amount, $1,285.80 is for attorneys fees, $500 is for late fees (on late fees), and $68.93 is related to interest (much of which is for interest on attorney's fees, late fees,

---

[6] *See,* Complaint (Doc.1) at exhibit "C" attached thereto, letter written by defendants Steeg and Glass as attorneys on behalf of defendant JPCHA and attachment consisting of filed "claim of privilege" based upon defendants' "usurious charges".

[7] *See,* Complaint (Doc. 1) at exhibits "A" and "D" attached thereto.

4

and other interest). And these expenses were assessed to her account while she remained current on her monthly assessments by paying $220 per month as reflected in her ledger.

Defendant JPCHA has answered plaintiffs' First Amended Complaint, but other condominium associations have not yet answered.[8]

### III.

### ARGUMENT

#### A. Summary Judgment Standard

To prevail on a motion for summary judgment, the movant must show that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A material fact is one "that might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

#### B. The 18% "Interest" and the $100 "Interest" Charges by JPCA are Usurious Pursuant To Louisiana's Usury Statutes.

In 2004, La. C. C. Art. 2924 was transferred and re-designated as La. R.S. 9:3500, but the editor's notes make it clear that transfer did not effect any substantive change in the law.[9]

La. R.S. 9:3500 is entitled "Rates of legal and conventional interest; usury." It provides:

> C. (1) The amount of the conventional interest cannot exceed **twelve percent per annum**. The same must be fixed in writing; testimonial proof of it is not admitted in any case.

---

[8] *See,* First Amended Complaint (Doc. 40), and defendant JPCHA's Answer (Doc. 108).
[9] *See,* La. R.S. 93500 (2012) annotated version under the heading "History." It is also emphasized by the Editor's Notes found under the heading "Notes" which is directly below the heading "History," that Article 2924 was not re-drafted, amended or the language otherwise altered in 2004, but rather merely transferred and re-designated as it states, "Editor's Note The text of this section formerly comprised Civil Code Article 2924 and was **transferred and re-designated** as R.S. 9:3500 by Acts 2004, No. 743, § 2." [emphasis added]. In fact, the annotated version of La. R.S. 9:3500 under the heading "history" lists the years that the statute has actually been amended or otherwise altered. It has not been amended since 1997.

>   (2) Except as herein provided, if any person shall pay **on any contract** a higher rate of interest than the above, as discount or otherwise, the same may be sued for and recovered within two years from the time of such payment.[10] [emphasis added].

Louisiana's usury statute expressly provides that interest cannot exceed 12% **on any contract**. Therefore, its application is broad and applies to any contract unless it is specifically excluded in La. R.S. 9:3500.[11]

In fact, the Second Circuit Court of Appeals for Louisiana has held that La. R.S. 9:3500 (former Art. 2924) is **the general law** of the Louisiana Civil Code concerning interest on any debts not specifically excluded from its coverage.[12] In *Research Group, Inc.*, defendant was sued based upon a <u>contract for legal services</u>.[13] The Court recognized that unless one of the exceptions in the statute applied, the usury statutes were the general law of the Civil Code:

>   Because this transaction is not per se a consumer credit transaction and the record does not reveal that the parties have availed themselves of the Consumer Credit Law, **<u>the general law</u> of the Civil Code concerning interest on debts must be applied to this case. Therefore, the amount of conventional interest which might be applied to this case cannot exceed 12% per annum and must be fixed in writing. La. C.C. Art. 2924**. Furthermore, even if there were an agreement, the 18% per annum interest reflected exceeded the maximum conventional rate, was usurious and would result in the forfeiture of the entire interest so contracted. La. R.S. 9:3501.[14] [emphasis added].

Similarly, in *C & A Tractor Company v. Branch,*[15] the Louisiana Third Circuit Court of Appeals applied La. R.S. 9:3500 to "service charges" asserted as a result of late payment upon an obligation of debt from <u>an open account; the underlying debt arose from charges for assembling</u>

---

[10] *See*, La. R.S. 93500C(1) and (2).
[11] The specific exclusions noted in the statute shall be discussed later in this motion.
[12] *See, Research Group, Inc. v. Sharp*, 430 So. 2d 165, 168-69 (La. App. 2d Cir. 1983).
[13] *See, Research Group, Inc. v. Sharp*, 430 So. 2d 165, 168 (La. App. 2d Cir. 1983).
[14] *See, Research Group, Inc. v. Sharp*, 430 So. 2d 165, 168-69 (La. App. 2d Cir. 1983).
[15] 520 So.2d 909 (La. App. 3d Cir. 1987).

a bulldozer. After the Court acknowledged that the "service charges" were "interest" it stated, where a "transaction was not covered by the Louisiana Consumer Credit Law the general law of the Civil Code concerning interest on debts must be applied."[16] In each of these cases, the Court used the term "must" not "may" apply to La. R.S. 9:3500 when one of the exemptions do not apply.

Similarly, in *Walker, Tooke & Lyons, LLP v. Sapp*,[17] plaintiff law firm brought suit against the client based on an alleged breach of a contract for legal services. The parties' contract called for 18% "finance charge" for late payment of attorney's fees.[18] The Plaintiff law firm argued that La. C. C. Art. 2924's (current La. R.S. 9:3500) usury provisions apply only to loans.[19] In interpreting the scope of La. C. C. Art. 2924 (current La. R.S. 9:3500), the Court held, "Article 2924's usury provisions of paragraph C is not stated as a limitation solely on loans for the use of money. To the contrary, the language of paragraph D of that article makes reference not only to interest on a loan, but to interest owed for a non-loan commercial or business **obligation.**"[20] [emphasis added]. For instance, paragraphs C and D state as follows:

> C (2) Except as herein provided, if any person shall pay **on any contract** a higher rate of interest than the above, as discount or otherwise, . . .
>
> (3)(a) The owner of discounter of any note or bond **or other written evidence of debt** for the payment of money, payable to order or bearer or by assignment, shall have the right to claim and recover the full amount of such note, bond, **or other written evidence of debt** and all interest not beyond twelve percent per annum interest that may accrue thereon, . . .
>
> (4)(a) The owner of any promissory note, bond, **or other written evidence of debt** for the payment of money . . . shall have the right to collect the whole amount of such promissory note, bond, **or other written**

---

[16] *C & A Tractor Company v. Branch* 520 So.2d 909, 910-11 (La. App. 3d Cir. 1987).
[17] 862 So. 2d 414 (La. App. 2nd Cir. 2003).
[18] *Walker, Tooke & Lyons, LLP v. Sapp*, 862 So. 2d 414, 416 (La. App. 2nd Cir. 2003).
[19] *Walker, Tooke & Lyons, LLP v. Sapp*, 862 So. 2d 414, 419 (La. App. 2nd Cir. 2003).
[20] *Walker, Tooke & Lyons, LLP v. Sapp*, 862 So. 2d 414, 419 (La. App. 2nd Cir. 2003).

7

> **evidence of debt** for the payment of money, notwithstanding such promissory note, bond, **or other written evidence of debt** for the payment of money . . ."
>
> D  The provisions of this Article shall not apply to a loan made for commercial or business purposes or deferring payment of **an obligation** for commercial or business purposes.[21]  [emphasis added].

The Court reasoned that if La. R.S. 9:3500 was intended to only apply to loans, the Louisiana legislature would not have broadened the scope beyond just loans by way of the language throughout section C and in the latter part of section D.[22]

Furthermore, the next section, La. R.S. 9:3501, entitled "Forfeiture of Interest," provides that **"[a]ny contract** for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so **contracted**."  [emphasis added].  A term "contract" is broader than the term "loan."

Beyond the plain language of the statutes, however, are the simple volume of Louisiana cases recognizing the application of the usury statutes to things other than loans.  The usury statutes apply to contracts to pay attorneys fees, for weekly news services, for wirelines services, commercial leases, and any number of other services provided on open account.  *See e.g,*, *Associated Press v. Toledo Investments, Inc.*, 389 So.2d 752 (La. App. 3d Cir. 1980) (holding that La. C.C. Art. 2924 (current La. R.S. 9:3500) applies to usurious interest charged on late payments on a contract to provide weekly news services); *Production Wireline Services, Inc. v. Trans-tech International Wireline Services, Inc.*, 685 So.2d 480 (La. App. 3d Cir. 1996) (vacating an arbitrators award of 18% interest on a claim of breach of contract as usurious based upon the application of La. C. C. Art. 2924 (current La. R.S. 9:3500); *Southern Marine Sales, Inc. v. Matherne*, 915 So.2d 1042 (La. App. 5th Cir. 2005) (applying the legal interest rate from La. R.S. 9:3500 to a judgment based upon a breach of a

---

[21] *See*, La. R.S. 93500C(2), (3)(a), (4)(a) and D.
[22] *Walker, Tooke & Lyons, LLP v. Sapp*, 862 So. 2d 414, 419 (La. App. 2nd Cir. 2003).

commercial lease agreement); *W.W. Page & Son v. Russell*, 7 La. App. 129 (La. App. 2d Cir. 1927) (applying La. C. C. Art. 2924 (current La. R.S. 9:3500) to usurious interest rates stemming from an open account); *Bonfanti v. Davis*, 487 So.2d 165 (La. App. 4th Cir. 1986) (applying La. R.S. 9:3501 in forfeiting usurious interest against lessor on a breach of a commercial lease); *Bieber-Guillory v. Aswell*, 723 So.2d 1145 (La. App. 3d Cir. 1998) (holding that pursuant to La. C. C. Art. 2924 (current La. R.S. 9:3500) and 9:3501, defendant decorator forfeited all interest stemming from charging a usurious rate on delayed payments on an open account); *Succession of Drake*, 359 So.2d 249 (La. App. 2d Cir. 1978) (holding that usury statute applied to service charges stemming from late payments on an open account).

Defendants rely on *Ex Rel Guste v. City Council of New Orleans*[23] for the proposition that a late payment penalty for utility bills is not subject to Louisiana's state usury laws, so the late payment penalties for which Reyes' sues are not subject to the usury laws either. That's not true. In *Guste,* the Court denied the claims of usury in that case because La. R.S. 9:3500 specifically excludes "consumer credit sales," and the Court found the utility bills met that definition. Therefore, charges stemming from late payments of utility bills are not governed by La. R.S. 9:3500 because of the exemption of "consumer credit sales."[24]

Reyes' claims of usury do not fall under the consumer credit exemption. Section 9:3516(12) defines 'consumer credit sale' as:

> **the sale of a thing, other than** the sale of religious periodicals, books, and other religious materials by bona fide religious associations, or **immovable property**, **in which a credit service charge is charged** and the purchaser is permitted to defer all or part of the purchase price or other consideration **in two or more installments** excluding the down payment when . . .[25] [emphasis added].

---

[23] 309 So.2d 290 (La. 1975).

[24] *Id* at 296 (the Court further held that the Consumer Credit Law specifically excludes regulation of utility rates which are governed by other means); La. R.S. 9:3500C(3)(b).

[25] La. R.S. 9:3516(12).

The facts involving Reyes' claims for usury do not meet several of these necessary requirements. For instance, Reyes usury claims did not involve any type of sale. Second, even if it did, her condominium is immovable property and therefore exempted from the definition of 'consumer credit sale.' Third, Reyes did not involve a 'credit service charge' and finally, did not involve a 'purchase that deferred all or part of the purchase price or other consideration in two or more installments.' Reyes bought a condominium unit. The Condominium Declaration and other laws of the association violate Louisiana's usury laws by charging usurious interest and late fees for alleged late payments of monthly condominium assessments. Therefore, defendants' reliance on *Ex Rel Guste* is again misplaced.

Finally, JPCA suggests that the transfer of C.C. Art. 2924 to Title 9 of the Revised Statutes was somehow intended to effect a change on the scope of Louisiana usury law. But that argument is flatly inconsistent with the Act that affected the transfer. Professor A.N. Yiannopoulos, editor of West's Louisiana Code, observed that "Section 2 of Acts 2004, No. 743, declares that the transfer of Article 2924 of the Louisiana Civil Code to Title 9 of the Revised Statutes and its redesignation as R.S. 9:3500, 'is neither an amendment to nor a reenactment of Civil Code Article 2924.'" Given that express pronouncement by the legislature, the defendants are hardpressed to argue the transfer from the general civil code to Title 9 resulted in any substantive change or limitation to the application of the usury statute.

Further, 9:3500 provides the authority for the collection of legal interest on a judgment. Clearly, a judgment is not a "loan." Yet, it is found in title 9. If 9:3500 only applied to "loans," as defendants argue, then there would be no statutory authority to award legal interest on a judgment.

Having established that the Louisiana Usury Laws (La. R.S. 9:3500 and 9:3501) are not limited to loans[26] and is <u>the general law</u> in Louisiana governing usurious interest charged on "any contract" or "obligation to pay a debt," we must now look to the exceptions to Louisiana's Usury Laws to determine whether the defendants' charges of "interest" are exempted. Otherwise they apply as a matter of law.

La. R.S. 9:3500 contains two exemptions:

> C(3)(b) This provision shall not apply to the banking institutions of this state in operation under existing laws or to a consumer credit transaction as defined by the Louisiana Consumer Credit Law.
>
> D   The provisions of this Article shall not apply to a loan made for commercial or business purposes or deferring payment of **an obligation** for commercial or business purposes.[27]

First, defendants are not banking institutions of this state. Second, defendants' usurious interest charges do not involve a loan or an obligation for commercial or business purposes and Reyes' condominium unit is restricted for residential purposes.[28] Third, defendants' usurious interest charges do not fall under the consumer credit exemption for the reasons discussed in detail above.[29] The facts involving defendants' usurious interest charges do not meet several of these necessary requirements. First, the defendants' usurious interest charges do not involve any type of sale. Second, even if argued they do, Reyes bought her condominium without any credit

---

[26] In addition to the cases already cited above which have applied La. R.S. 9:3500 and 9:3501 to a contract for legal services and an open account, the following are cases wherein the Louisiana Usury Laws were also applied in a non-loan context.

[27] *See*, La. R.S. 93500C(3)(b) and D.

[28] *See,* copy of JPCHA's Condominium Declaration attached hereto as Exhibit 1, at Article VII, paragraph 1.

[29] Section 9:3516(12) defines 'consumer credit sale' as:

> **the sale of a thing, other than** the sale of religious periodicals, books, and other religious materials by bona fide religious associations, or **immovable property**, **in which a credit service charge is charged** and the purchaser is permitted to defer all or part of the purchase price or other consideration **in two or more installments** excluding the down payment when . . .[29] [emphasis added].

11

extended by JPCHA.  Third, her condominium is immovable property[30] and therefore exempted from the definition of 'consumer credit sale.'  Fourth, the defendants' usurious interest charges do not involve a 'purchase that deferred all or part of the purchase price or other consideration in two or more installments.'

Clearly the defendants' usurious interest charges do not fit into any of the exemptions contained in La. R.S. 9:3500.  They do however involve a "contract" and/or an "obligation to pay a debt."  Reyes entered into a cash purchase agreement which contract specifically binds her to the JPCHA Condominium Declaration and creates an obligation upon owners to make monthly condominium assessments in order to avoid being charged usurious interest.

Based upon the foregoing facts and law, the defendants' usurious interest charges are clearly governed by La. R.S. 9:3500 and 9:3501.  Furthermore, there are no triable issues of fact necessary to be resolved that prevents this court from finding as a matter of law that defendants' 18% interest charges and $100 interest charges are in violation of La. R.S. 9:3500 and 9:3501.

### C. The 18% Interest and the $100 "Late Fees" and/or "Late Charges" by Defendants are Considered Interest Pursuant to La. C. C. Art. 2000.

The defendants have each filed motions arguing that the usury statutes do not apply to "late fees."  They are wrong, and Reyes is entitled to summary judgment holding that the late fees are subject to the usury laws.

La. C. C. Art. 2000 is entitled "Damages for delay measured by Interest" and defines damages for delay in performance of an obligation as interest.  It states in relevant part:

> [w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the **interest** on that sum from the time it is due, at the rate agreed by the parties or in the absence of

---

[30] *See,* copy of JPCHA's Condominium Declaration attached hereto as Exhibit 1, at Article III, paragraph (i).

agreement, at the rate of legal interest as fixed by R.S. 9:3500.[31] [emphasis added].

In *Walker, Tooke & Lyons, LLP v. Sapp*,[32] plaintiff law firm brought suit against the client based on an alleged breach of a contract for legal services. The parties' contract called for an 18% "finance charge" for late payment of attorney's fees.[33] The Court stated that La. C. C. Art. 2000 defines damages for delay in performance of an obligation as interest. Finding the 18% rate was usurious, the Court held that all interest was waived. In so doing, it expressly rejected the law firm's arguments that its finance charge was not interest and that the usury provisions applied only to loans.

> In reaching this conclusion, we disagree with WTL's assertions that its finance charge was not interest and that Article 2924's usury provision applies only to loans. The finance charge listed in the parties' contract was for Sapp's untimely performance of his obligation to pay money and thus falls within Article 2000's discussion of interest as moratory damages. Article 2924's usury provision of paragraph C is not stated as a limitation solely on loans for the use of money. To the contrary, the language of paragraph D of that article makes reference not only to interest on a loan, but to interest owed for a non-loan commercial or business obligation.[34]

Likewise, the Louisiana Supreme Court has recognized that all charges for the use of money are considered "interest" for purposes of the usury statutes. *Thrift Funds of Baton Rouge, Inc. v. Jones,* 274 So. 2d 150, 157 (La. 1973)("charges for use of the money--whether denoted as interest, whether capitalized within the face amount of the note, or whether denoted as an 'extension' or 'late' charge--are all 'interest for purposes of determining whether a note is

---

[31] See, La. C. C. Art. 2000.  R.S. 9:3500 was previously identified as C.C. Art. 2924.
[32] 862 So. 2d 414 (La. App. 2nd Cir. 2003).
[33] *See, Walker, Tooke & Lyons, LLP v. Sapp*, 862 So. 2d 414, 416 (La. App. 2nd Cir. 2003).
[34] *See, Walker, Tooke & Lyons, LLP v. Sapp*, 862 So. 2d 414, 419 (La. App. 2nd Cir. 2003); *see also, Research Group, Inc. v. Sharp*, 430 So. 2d 165, 168-69 (La. App. 2d Cir. 1983) ("service charges" due to alleged non-payment upon a contract for services considered interest and governed by La. C. C. Art. 2924); *Gordon Finance Company v. Chambliss*, 236 So.2d 533, 535 (La. App. 4th Cir. 1970) (court held "no matter what the form of an agreement for an extra payment on account of the delay to perform an obligation to pay money, the extra payment is interest. The "delinquent charge" here is interest.").

usurious under Civil Code Article 2924."). Other courts have recognized that merely changing the name of a fee for delayed payment does not take it outside the realm of the usury statutes. *Gordon Finance Company v. Chambliss*, 236 So.2d 533, 535 (La. App. 4th Cir. 1970), citing *Griffin v. His Creditors,* 6 Rob. 216 (La.1843) and *Consolidated Loans, Inc. v. Smith*, 190 So.2d 522 (La.App. 1966), cert. denied, 249 La. 753, 190 So.2d 913 ("no matter what the form of an agreement for an extra payment on account of the delay to perform an obligation to pay money, the extra payment is interest. The 'delinquent charge' here is interest.").

In their respective motions to dismiss, the defendants cite to LSA-R.S. 9:3505 for the proposition that late fees and attorneys fees are not subject to usury laws. That section very plainly applies only "to any conventional obligation covered by R.S. 9:3502-3506."[35] Those sections deal with specific types of loans, primarily mortgages on immovable property backed by the Veterans Administration or the Federal Housing Administration.

If the plain language of section 3505 was not clear enough, the Court merely needs to look at the next section, LSA-R.S. 9:3506, entitled "Application," which provides:

> "[t]he provisions of R.S. 9:3502-9:3506 shall apply only to conventional obligations bearing simple interest from date on the unpaid balance and shall not apply to or affect pre-computed interest or discount loans; **nor shall it affect the enforceability or collectability of notes or obligations as provided in 9:3500."** Notwithstanding the twelve percent simple interest rate limitations under R.S. 9:3503, the provisions of R.S. 9:3504 and 3505 shall apply to federally related mortgage loans subject to 12 U.S.C. § 1735f-5 that bear simple interest at rates in excess of twelve percent per annum.[36]

---

[35] LSA-R.S. 9:3505 provides:

> **Notwithstanding any other law to the contrary, particularly** but not exclusively **R.S. 9:3500**, . . . the following charges, fees, costs and expenses shall not be considered interest **on any conventional obligation covered by R.S. 9:3502-9:3506**. . . [emphasis added].

[36] *See*, Louisiana Annotated Statute La. R.S. 9:3500 which provides under "Notes" that in 2004, the Louisiana Legislature re-designated Article 2924 as 9:3500. It is the same article, just changed its identification.

Reyes' claims of violations of Louisiana's State Usury Laws against the defendants are not premised upon sections LSA-R.S. 9:3502-9:3506. Reyes' complaint clearly states in the first paragraph and throughout that defendants' violations of Louisiana's State Usury Laws are governed by La. R.S. 9:3500 and 9:3501.[37] Reyes does not espouse the provisions of La. R.S. 9:3502-9:3506 in connection with the usury claims made against the defendants because as clearly stated in the section entitled "Application," and in the beginning of La. R.S. 9:3505, **La. R.S. 9:3502-9:3506 shall apply to federally related mortgage loans and shall not affect the obligations provided for in La. R.S. 9:3500**.

The defendants' reliance on *United Federal Savings & Loan Association v. Cage*[38] for the proposition that the late fees, interest and other penalties are not subject to Louisiana's usury laws is misplaced for the same reason. The plaintiff in *United Federal Savings & Loan Association* alleged usury against the defendant bank pursuant to La. R.S. 9:3505, not La. R.S. 9:3500,[39] because that case involved a 'federally related mortgage loan' which is governed by La. R.S. 9:3505. The Court held, "La. R.S. 9:3505 applies to the type of loan transaction involved here and provides that late charges shall not be considered interest."[40] Again, Reyes' claim does not involve a 'federally related mortgage loan,' nor La. R.S. 9:3505, but rather usurious interest stemming from alleged failure to pay monthly condominium assessments governed by La. R.S. 9:3500 and 9:3501.

The reference to section 3505 is relevant for another reason, though. Given that late fees and penalties are expressly excluded from the calculation of usury charges in that section for

---

[37] *See*, Original Complaint and First Amended Complaint at ¶s 1, 40, 77, 80, 101, 102 and 103.
[38] 487 So.2d 171 (La. App. 4th Cir. 1986).
[39] *United Federal Savings & Loan Association v. Cage*, 487 So.2d 171 (La. App. 4th Cir. 1986).
[40] *Id* at 173.

15

certain types of obligations, the fact that the legislature expressly carved out all other obligations makes it plain that such late fees and penalties **are** subject to the usury statute for all other obligations under LSA-R.S. 9:3500 and 9:3501, just as the Louisiana Supreme Court recognized in *Thrift Funds of Baton Rouge, Inc. v. Jones*. In other words, by limiting the exclusion of late charges and attorneys fees to certain types of loans as specified in only four statutes (9:3502-3506), the legislature obviously intended such fees to be included within the scope of the usury statutes with respect to all other obligations. That is basic statutory interpretation.

As a matter of law by having met the definition of La. C. C. 2000, both the 18% interest and the $100 dollar "late fee" and/or "late charge" are damages assessed by the defendants upon Reyes for alleged delays in the performance of payments of money. Therefore, by definition, these damages by the defendants are classified as "interest" and its rate is governed by Article 2924, now known as 9:3500, as a matter of law.

Defendants may argue that Reyes agreed to be bound by the Condominium Declarations, so she cannot complain about the excess interest rate. Although parties may agree to a rate of interest in their contracts as noted in La. C. C. Art. 2000, such agreement still shall not provide for interest at a rate greater than 12% per annum, otherwise it is rendered usurious by La. R.S. 9:3500 and 9:3501.[41]

---

[41] *See, Walker, Tooke & Lyons, LLP v. Sapp*, 862 So. 2d 414, 418 (La. App. 2nd Cir. 2003) ("if the parties had agreed in writing to pay interest as required by Article 2924, the maximum rate of conventional interest would nevertheless be 12 percent per annum.") *citing, Research Group, Inc. v. Sharp*, 430 So. 2d 165, 168-69 (La. App. 2d Cir. 1983) ("even if there were an agreement, the 18% per annum interest reflected exceeded the maximum conventional interest rate, was usurious and would result in the forfeiture of the entire interest so contracted.").

Respectfully submitted, this 30th day of October, 2012.

        NICOLE REYES AND FDCPA CLASS ACTION PLAINTIFFS AND USURIOUS CLASS ACTION PLAINTIFFS

        BY:  FOWLER RODRIGUEZ VALDES-FAULI

        /s/: *Todd G. Crawford*
        Todd G. Crawford (20150)
        John S. Garner (25314)
        Fowler, Rodriguez, Valdes-Fauli
        2505 14th Street, Suite 500
        Post Office Box 4080 (39502)
        Gulfport, MS 39501
        Telephone: (228) 822-9340
        Facsimile   (228) 822-9343
        *Attorneys for Nicole Reyes and FDCPA class action plaintiffs and usurious class action plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        */s/ Todd G. Crawford*
        Todd G. Crawford