**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NICOLE REYES, ET AL** | **CIVIL CASE NO.:** |
| | **2:12-cv-02043-HGB-DEK** |
| **PLAINTIFFS** | |
| **VERSUS** | **DISTRICT COURT JUDGE:** |
| | **HELEN G. BERRIGAN** |
| **JULIA PLACE CONDOMINIUMS** | **MAGISTRATE JUDGE:** |
| **HOMEOWNERS ASSOCIATION,** | **DANIEL E. KNOWLES, III** |
| **INC., ET AL** | |
| **DEFENDANTS** | **SECTION "C"** |

---

**MEMORANDUM IN OPPOSITION TO THE ROTUNDA CONDOMINIUMS**
**HOMEOWNERS ASSOCIATION, INC.'S MOTION TO DISMISS**
**UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

---

Plaintiff and proposed class representative, Nicole Reyes ("Plaintiff" or "Reyes"), opposes the Motion to Dismiss under *F.R.C.P. 12(b)(1)* filed by The Rotunda Condominiums Homeowners Association, Inc. ("Rotunda")(R. Doc. 118).

Reyes has standing to assert claims against Rotunda on behalf of the yet certified putative class based upon the allegations in the Complaint. Specifically, Reyes and the putative class as a group – named and unnamed – have suffered similar if not identical injuries at the hands of Rotunda, the other named condominium associations and Steeg, who are all related by way of a conspiracy and/or concerted scheme, and/or otherwise juridically related in a manner that suggests a single resolution of the plaintiffs' claims would be expeditious.

Notably, the affidavits attached to this opposition confirm that Steeg, through debt collection efforts for a developer/property manager intimately involved in condominium conversions, RCB, manipulated the condominium conversions so that Steeg directly benefited from the Associations' charging excessive interest, late fees and attorney's fees. As RCB is the

common link between Steeg and Rotunda, a common nucleus of facts justifies the allegations and class certification.  For these reasons and the fact that Rotunda has admitted it charged at least two of its resident owners usurious interest, Rotunda's motion to dismiss should be denied, and it should be directed to answer the complaint and engage in discovery.  At a minimum, Rotunda should disclose the identity of the two putative members with direct individual standing, explain RCB's roll in debt collection, and provide discovery responses on the conversion and Steeg's involvement with same.

## I.    RELEVANT FACTS & PROCEDURE

At this stage of proceedings, defendants have not yet answered; no discovery has been propounded, and no depositions have taken place.  The amended complaint was properly filed by right before any party answered, and an amicable effort was and continues to be taken by Reyes to dismiss certain condominium associations that were not involved in the conspiracy and/or concerted scheme initiated and directed by defendant Steeg in violation of the Federal Debt Collections Practice Act ("FDCPA"), Louisiana's Usury Laws, Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") and the Louisiana Condominium Act.  The Associations that were dismissed to date retained complete control over their debt collection practices, despite the fact that Steeg was involved in setting up the initial condominium documents during the conversion while the Association takes control from the developer.

In order to evaluate the Rotunda's motion, the Court necessarily must consider the basic background facts, even at this preliminary stage.  But the Rotunda's attack on standing is not a factual one, but rather a facial attack, as evidenced by its motion: "she [Reyes] cannot and *does not allege* Rotunda caused or contributed to her injury."[1]  Rotunda does not challenge any of the

---

[1] *See*, (Doc. 118-1) at p. 4, ¶ 1.

allegations in the complaint.  Nor does it submit any facts outside the complaint, whether by affidavit or otherwise.  Therefore, the Court must presume that all of the allegations in the complaint are true.[2]  Affidavits providing a common link between Steeg, RCB, and Rotunda also support these allegations and are attached at this early stage of this litigation.[3]

In that respect, the Complaints and supporting affidavits provide that Steeg has conspired with the remaining condominium association defendants, including Rotunda, to set their respective Condominium Declarations to charge usurious "interest" upon its members in violation of the Louisiana Condominium Act and Louisiana Usury Laws; have sent form collection letters on behalf of the named condominium associations, including Rotunda, to its members attempting to collect the usurious and illegally charged "interest," which efforts are in violation of the FDCPA, LUTPA and Louisiana Usury Laws; and have filed liens on behalf of the remaining condominium association defendants, including Rotunda, seeking to wrongfully dispossess condominium unit owners of their property through this concerted conspiracy of the defendants.  At this stage of the proceedings, the facts supporting the conspiracy and/or concerted scheme of defendants are established through the allegations in Reyes' Complaint as follows:

---

[2] *See*, *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2008 U.S. Dist. LEXIS 101240, *6-7 (N.D. Tex. Dec. 11, 2008), *citing Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981) ("because TDHCA filed its motion to dismiss without supporting evidence, its attack on the court's jurisdiction is considered facial, rather than factual, and the court must presume that the allegations of ICP's complaint are true.  Further, the court must deny the motion if the allegations are sufficient to allege jurisdiction."); *see also, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("On a motion to dismiss for lack of standing general factual allegations of injury resulting from the defendant's conduct may suffice because the court presumes that general allegations embrace those specific facts that are necessary to support the claim").

[3] The affidavit of Mike Sobel, Exhibit 1, explains how Steeg, through its ties with RCB, manipulated condominium conversions to its advantage to further illegal debt collection practices.  The affidavit of Patrick Andras, Exhibit 2, an owner at yet another condominium association managed by RCB, shows that Steeg charged him excessive late fees, interest, and attorney's fees as part of the debt collection activity.  Finally, the affidavit of counsel, John Garner, attached as Exhibit 3, authenticates court documents that show (1) Rotunda, through RCB and Steeg, was involved with similar debt collection practices, which as alleged, violate the FDCPA and (2) widespread illegal debt collection activity as alleged in the complaint.

- **Defendants Glass and Steeg represent at least 21 Condominium Associations in the New Orleans Area, including JPCA, who at the firm's direction have set Condominium Declarations** that facially violate Louisiana usury laws by illegally authorizing interest rates of 18%, late fees exceeding 40% of the principal, and **together with each Condominium Association assert** attorney fees through Condominium ledgers before the unit owner receives any notification any debt is owed, a practice also prohibited by the FDCPA. *See Production Wireline Services, Inc. v. Trans-Tech International Wireline Services, Inc.*, 685 So.2d 480, 483 (La. App. 3d Cir. 1996) (interest rates and late fees that exceed 12% usurious and against public policy).[4]

- **Reyes, as a representative of the FDCPA class commonly victimized by Defendants' collection efforts**, shows through the ledgers she received along with two separate lien/privileges asserted by the Association on her unit numerous violations of federal debt collection law.[5]

- Correspondence, dated April 17, 2012, on the letterhead of "Steeg Law" bearing the signature of Margaret V. Glass was sent to Reyes seeking to collect a debt allegedly owed to Julia Place Condominiums Homeowners Association, Inc. Said correspondence is attached as Exhibit "A" and is the first written notification that Reyes had outstanding fees after she brought her account current in December 2011. **Upon information and belief, similar correspondence is sent by Steeg Law, LLC, and its representatives as agents for at least 20 other condominium associations throughout the city of New Orleans.[6]**

- Article VII of the Condominium documents set forth the usurious rate of 18%, and on information and belief, **defendants Steeg and Glass chose the higher rate** to further improper debt collection efforts and coerce unit owners to pay fees found to be against the public policy of Louisiana at each of the 21 Associations they represent. *La. R.S. 9:3500, 9:3501, La. C.C. Art. 2001.* Through this practice, **each of the 21 condominium association defendants charge excessive interest and late fees and improperly includes such fees in Condominium Declarations that violate the public policy of Louisiana.[7]**

- Article XII of the Condominium Declaration also improperly declares attorney fees and costs for the collection of unpaid late fees may also be sought and is clearly intended to benefit the Steeg Law Firm, who is also the registered agent for the Condo Association. **Similar declarations may be found in the documents governing the 20 other associations' members of Steeg act as agents for.[8]**

- The 30-day provision required by the FDCPA is clearly contradicted by the 7-day lien

---

[4] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 3.
[5] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 4.
[6] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 36.
[7] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 40.
[8] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶¶ 41-42.

threat in Exhibits "A" and "D," especially when legal remedies of garnishment and seizure are threatened. **Upon information and belief, similar letters were sent by Defendants to other members of the putative classes as part of their regular business efforts to collect debts that are not owed**.[9]

- Notably, Steeg Law, LLC and the debt collectors in this matter are responsible for preparing the Act of Declaration at Julia Place Condominiums and for the other 20 condo associations they apparently represent. The Declarations themselves violate Louisiana usury law and even the Louisiana Condominium Act's requirements for amending by laws and declarations and cannot be used to justify any lien and alleged privilege by the respective Association. **Using the illegal provisions which are contrary to the FDCPA, usury laws and public policy, the Associations and Steeg assert a claim of privilege with additional attorney fees, which are clearly designed for the benefit of Defendants and the law practice**.[10]

- After counsel for Reyes sent Defendants correspondence dated May 9, 2012 informing Defendants that Plaintiff contested the validity of the debt and that Plaintiff was represented by counsel (attached as Exhibit "B"), violations of the FDCPA and Louisiana usury laws continued. **Upon information and belief, similar acts also occurred with the 20 other Condominium Associations represented by Steeg**.[11]

- To compound the illicit debt collection efforts after sending Exhibit "B" to counsel for Defendants on May 9, 2012, Defendants subsequently sent Reyes directly correspondence dated June 12, 2012, on the letterhead of "Steeg Law" bearing the signature of Margaret V. Glass. This letter is the first notification of alleged additional legal fees, usurious charges, a privilege/lien higher than the first and seeking to again collect a debt allegedly owed to Julia Place Condominiums Homeowners Association, Inc. Said correspondence is attached as Exhibit "D." **Upon information and belief, other correspondence substantially similar to Exhibit "D" has been sent to other members of the class and residents at the other 20 Condominium Associations represented by Steeg**.[12]

- Again, the second letter omits the key requirement under the FDCPA of an actual amount owed, and overshadows the FDCPA 30-day requirement. For example, the collection efforts intensify and seek to accelerate amounts owed by improper late fees and show Reyes somehow owes $1,580.82, despite the fact she continued to pay her monthly assessment of $219.13, as evident by the schedule of payments attached to the claim of privilege. For example, the schedule shows that between October 2011 and June 2012, assessments total "$1,972.17." Payments received reflect "$1,980.00." Yet the amount due is now "$1,580.82." **Upon information and belief, similar letters were sent by Defendants to residents/owners of the other 20 Condominium Associations they**

---

[9] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 51.
[10] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 55.
[11] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 56.
[12] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 58.

represent and collect debts for.[13]

- The Association also continued to harass Plaintiff and the putative class members for any unpaid fees, and in the case of Reyes, actually denied her access to her unit by refusing to give her a new access code to the building because she allegedly owed late fees, which she has repeatedly disputed.  On information and belief, the Association changed the access code to deny Reyes access to the common elements and her unit to coerce payments of disputed late fees.  Reyes was informed she was "locked out" because she had not paid her late fees. **Upon information and belief, similar actions were taken against members of the class and illustrate yet another effort to harass Plaintiffs and force them to pay debts not owed, contrary to both the FDCPA and public policy of Louisiana.**[14]

- The second claim of privilege goes further than the first, and despite Plaintiff's challenge to the initial debt, also states "by recordation of this affidavit, the Association preserves its claim of privilege against Unit 421 in the total amount of $3,991.25, together with interest in the amount of 18 percent per annum from May 21, 2012 until paid, along with costs, expenses and reasonable attorney fees … **Upon information and belief, similar letters were sent by Defendants to other members of both classes**. Thus, an initial usurious late fee of $100.98 in January, 2012 has now ballooned to a second privilege of almost $4,000.00 with interest and legal fees still accruing in less than 5 months.[15]

- Defendants continue to regularly send letters in similar form to Exhibits "A" and "D" to members of the putative Class, and through respective Condominium Associations, **all Defendants continue to benefit from charging excessive interest and fees that are contrary to public policy**.[16]

- The "policies' and practices of defendants" in their concerted conspiracy is further noted in detail in paragraphs 70-80 of the complaint.[17]

- [The scope of the class]: This action is brought on behalf of a class defined as (i) all persons to whom letters in the form of Exhibits "A" and "D" were sent, or to whom substantially similar letters were sent, (ii) in an attempt to collect condominium dues, late fees, penalties, interest, attorney fees or other condominium or homeowner association assessments, (iii) which were not returned undelivered by the U. S. Post Office. Subclass "A" (the FDCPA class) includes those class members who were sent Exhibit "A" and "D" during the one year prior to the date of filing this action. Subclass "B" (the LA usurious class) includes those class members who paid usurious fees, penalties or interest in the two year period before this filing.[18]

---

[13] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 61.
[14] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 65.
[15] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 67.
[16] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 69.
[17] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶¶ 70-80.
[18] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 81.

- Plaintiffs allege on information and belief that based on the use of form letters such as Exhibits "A" and "D" and because Steeg benefits from all collection efforts that nearly every unit owner out of the 101 units at Julia Place and unit owners **from the respective 20 other Associations they represent** either received a form letter or paid an illegal late fee, with illegal interest charged so that the class is so numerous that joinder of all members is impractical.[19]

- Plaintiffs allege on information and belief that **Steeg, by representing at least 21 different Condominium Associations throughout the New Orleans area**, has used form letters like Exhibits "A" and "D" to collect debts contrary to public policy and place liens and/or threaten liens with improper legal fees contrary to the FDCPA and solely for the benefit of Steeg Law Firm.[20]

- There are **questions of law and fact common to the class, which common issues predominate. . : (i) whether interest fees of 18 percent contained in Condominium Articles and late fees seeking over 40% of the principal are usurious and against public policy under Louisiana jurisprudence**, including *Production Wireline Services, Inc. v. Trans-Tech Wireline Services, Inc.*, 685 So.2d 480, 483 (La. App. 3d Cir. 1996); *Arnold v. Hancock*, 950 So.2d 911, 919 (La. App. 3d Cir. 2007) (interest on interest is not favored by the law); **whether the Condominium Associations forfeited all usurious interest and late fees through collection efforts by Defendants as established by Louisiana jurisprudence**, including *Ganus v. Jopes*, 470 So.2d 237 (La. App. 4th Cir. 1985) (holding all usurious interest is forfeited, including the non-usurious portion); **whether the Condominium Associations and debt collectors harassed class members and took other actions to coerce payments on fees not owed, against the policy of Louisiana and for the immediate payment of disputed amounts owed.**[21]

- **Reyes' claims are typical of those of the class members. All are based on the same facts and legal theories.**[22]

Rotunda could have denied these allegations by answering the complaint or in their motion to dismiss by submitting evidentiary proof through documents or affidavits or otherwise. By refusing to challenge and disprove any of the allegations against it in the complaint, Rotunda implicitly acknowledges that it conspired with Steeg and/or Glass to violate FDCPA, Louisiana's Usury Laws, LUTPA and the Louisiana Condominium Act, at least for the purpose of the present

---

[19] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 82.
[20] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 83.
[21] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 84.
[22] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 85.

motion.

Rotunda is attempting by way of its motion to dismiss to clean its hands from participation in the conspiracy concocted by Steeg before it is forced to divulge the extent of its involvement in this wrongful conduct, thereby trampling on the rights of innocent owners of real property that have sustained similar injuries as Reyes by setting usurious late fees, charging usurious "interest," and otherwise illegally trying to deprive people of their property throughout the New Orleans area.

In fact, Rotunda has admitted that at least two of its unit owners have been assessed late charges and/or "interest." "We have found that there have been only two people that have been assessed a late charge by Rotunda."[23]   However, since the admission Rotunda has failed to respond and produce evidence that those late charges were not usurious, or that its Declaration did not allow for usurious interest, or that Rotunda has not charged wrongful and excess attorney's fees, or sent form demand letters through Steeg similar to the ones received by Reyes, or collected usurious late charges from at least the two admitted victims, or that Rotunda has not filed an unlawful lien against any of its condominium owners.

Rotunda's e-mail demonstrates its awareness that other condominium associations have been voluntarily dismissed after evidencing a lack of involvement in the conspiracy with Steeg and/or Glass; however, Rotunda is reluctant to produce evidence supporting its innocence or supposedly "de minimus" violations.[24]   A class action is the superior procedural vehicle to recover such modest damages because individual actions would not be judicially efficient, and would probably result in the non-pursuit of the claims – apparently Rotunda's ultimate goal.

---

[23] *See*, copy of October 11, 2012 email from counsel for Rotunda and response from counsel for Reyes attached hereto as Exhibit 4.
[24] *See*, *id.*

More importantly, counsel's email is not only an implicit admission of usurious charges against two of its resident owners, it establishes that there are at least *two individuals at Rotunda who in fact have a direct injury caused by Rotunda*, as alleged in the complaint, who may wish to exercise their rights and participate in this class action lawsuit.

Rotunda should not be allowed to secret its true involvement in this wrongful conduct and be dismissed from this case at this early stage of proceedings, before Rotunda is required to disclose the usurious charges in response to discovery. These two individuals, who have been admittedly charged usurious "interest" and therefore possess direct standing against Rotunda, should be identified by Rotunda, and they should be given direct notice of this class action lawsuit so that they can decide whether to participate in this lawsuit, whether as a class representative or a class member.

### A. Affidavits show connection between Rotunda and Steeg and also that RCB links Rotunda to illegal debt collection activity.

Rotunda would have this Court believe that it has *no* involvement with Steeg Law, and no connection to the allegations in the complaint. That is simply not true. In fact, Steeg has also sent letters on behalf of Rotunda that are very similar to the one sent to Reyes to (1) seek collection of a debt; and (2) linked to condominium assessments.

Specifically, despite Rotunda's motion to the contrary, Steeg collected what it deemed were "unpaid" invoices somehow owed by a Rotunda unit owner when a pipe beneath the unit owner's floor broke and damaged Emeril's restaurant below. See Exhibit 3, Exhibit E to petition. The invoices that Steeg sought to collect were issued by *RCB*, a property manager frequently found at the heart of each illegal assessment. In that case, *Rotunda v. Woods*, the debt collection efforts by Steeg were apparently tied to condominium documents the law firm prepared.

*Woods* links Steeg with RCB and the Rotunda, which supports the allegations of a pattern of illegal debt collection as alleged throughout the complaint.  For example, Steeg also sent the basic form letter to Woods just as it did in this case to Ms. Reyes.  The letter, part of Exhibit 3, clearly seeks the collection of a debt on behalf of Rotunda Condominium Association.  For example, the letter states:

> In connection with the above referred to matter, please be advised the undersigned has been retained by The Rotunda Condominiums Homeowners Association, Inc. ("The Association") to pursue the collection of the outstanding amounts due the Association for repairs to your Unit necessitated by yours and your contractor's work…
>
> This communication is an attempt to collect a debt and any information obtained will be used for that purpose.[25]

Notwithstanding the fact that Rotunda is tied to Steeg's alleged illegal debt collection activity that runs throughout the complaint, the letters support the alleged claim of the conspiracy between Steeg and the various condominium associations, including the Rotunda.  Again, RCB links Steeg to Rotunda because by involving itself in condominium conversions, Steeg manipulates the process for its benefit and to the detriment of the unit owners.[26]

Instead of acknowledging that *Steeg* does collect debts on behalf of Rotunda, the motion to dismiss claims that Reyes does not "possess any particular knowledge with regard to their procedures and policies in collecting condominium dues."  Reyes alleged the very conspiracy that happened to her as a class representative and the affidavits demonstrate the same type of thing has also happened to other unit owners at the various associations named.

---

[25] Exhibit 3-A, affidavit of counsel, emphasis added.  The letter is Exhibit E to the Petition filed by Steeg on behalf of Rotunda.
[26] See Exhibit 1, affidavit of Mike Sobel.

Affidavits from other unit owners at condominiums in New Orleans support the conspiracy as alleged in the complaints. In Exhibit 1, the affidavit of Mike Sobel, the illegal debt collection activity is tied directly to RCB and the condominium conversion at the Lofts, one of the associations named in this complaint. Sobel documents the process in detail and highlights:

- I was a tenant during the conversion of The Lofts into condominiums; RCB was the owner, developer and served as the first Board of Directors and manager for the Loft Condominiums.[27]

- Steeg Law, LLC served as closing attorney for RCB and drafted the condominium documents. During the conversion, and after, Steeg was involved with collecting debts related to condominium assessments, and, pursuant to the fee structure outlined in the condo docs they drafted, added interest, compounded interest and late fees to any unpaid assessment.

- Steeg Law sent unit owners letters that described these fees as a debt and threatened lawsuits. Steeg, through it connections with RCB, would also be paid attorney's fees out of condominium funds, even when the debts were challenged.

- In an effort to stop the bleeding in legal fees and the unreasonableness of RCB, the homeowners took over the Board as soon as we were within our rights to do so, and I served as Vice President.

- In the first action of the New Board, we advised Randy Opotowsky of Steeg Law to cease and desist any and all proceedings against homeowners as these debt collection efforts were harassing and creating a hostile living environment. We specifically stated that we would handle the delinquent accounts directly with each respective owner.

- Following our Board meeting, Steeg solicited and gained the support of my two counterparts on the Board in order to reengage their collection efforts. Immediately thereafter, and before the unit owners could take action to block these debt collection efforts, Steeg filed three lawsuits against building residents. The Board was never apprised of the costs until after RCB paid the bills from Steeg.

- The actions of Steeg Law decimated our community and rendered the Board ineffective to address other pressing matters affecting the building.

- Steeg continued these aggressive debt collection efforts and refused to agree with the Board that some members could be removed by a vote of the majority of the condominium owners. Despite the procedure being clearly outlined in the condo

---

[27] Exhibit 1.

documents drafted by Steeg, and despite 89% signature on petition of homeowners seeking to remove the then President, Steeg refused to acknowledge the homeowners' request to remove the Board member, who was cooperating with them and facilitating their efforts, contrary to the best interests of the HOA.

Ultimately, Sobel settled his case,[28] but during the process, even the judge agreed the late fees and attorney's fees were excessive. Sobel also emphasized that "RCB would frequently collect attorney's fees for condominiums, even where the debt was challenged, and before judgment."[29] That process puts the association in the position of collecting a challenged debt, which as alleged, is also contrary to the FDCPA.

In addition, a cursory review of CDC filings in the last three years shows that Steeg has issued debt collection letters for unpaid assessments on behalf of a variety of condominium associations, and these letters are contained in the record of numerous suits, including but not limited to:

> *Gallery Row CHA, Inc. v. Juanita Hunter,* Filed 9/21/2009, Case No. 2009-09998; *FMC Enterprises, LLC v. Prytania St. Mary CHA,* Filed 10/12/2010, Case No. 2010-10430; *Carol CA v. Versailles, LLC,* Filed 4/20/2010, Case No. 2010-03967; *Julia Place CA v. Tom Andrade,* Filed 4/20/2010, Case No. 2010-03968; *Baronne Street CA v. Assurance Co. of America,* Filed 5/12/2009, Case No. 2009-04893; *Paragon Lofts Condos, Inc. v. Louis A. Jr.,* Filed 3/13/2012, Case No. 2012-02542*; Cotton Mill Condo Assoc. v. Frazier, Don, et al,* Filed 11/21/2007, Case No. 2007-15048; *Julia Place Condo Assoc., Inc. v. Andrade, Tom, et al,* Filed 4/20/2010, Case No. 2010-03968; *The Lofts v. Normand, Robert Jr.,* Filed 3/3/2008, Case No. 2008-02304; *The Lofts v. Vincenzo, Michael,* Filed 3/3/2008, Case No. 2008-02305; *St. Charles Ave. Condo HO v. Person, Pamela Hathaway, et al,* Filed 3/25/2008, Case No. 2008-03229; *923 St. Phillip St. Condo. Assoc., Inc. v. Henson, William,* Filed 4/3/2008, Case No. 20098-03664; *The Lofts v. Sobel, Anne,* Filed 8/18/2008, Case No. 2008-08561; *Gallery Row HO v. Teplitzky, Burt,* Filed 9/21/2009, Case No. 2009-09997; *Gallery Row HO v. Hutler, Juanita*; *Charles* House

---

[28] As he stated in his affidavit, "At this time, I challenged what amounted to $2200 in late fees, interest, and penalties assessed on my unit and offered to settle at $1100, which under direction from Steeg, RCB rejected."
[29] Exhibit 1.

Co. v. Brennan, Ellen, Filed 4/4/2011, Case No. 03651, Div. M; *800-802 Fern St. v. Luna, Mario E.,* Filed 12/15/2011, Case No. 2011-12936.[30]

Thus, the activities described in the Complaint are not limited to Reyes, and are not an isolated act of wrongdoing. They involve each of the condominium units identified in the Complaint.

## II.   LAW AND ARGUMENT

### A. Motion to Dismiss 12(b)(1) Standards

When a defendant files its motion to dismiss alleging lack of standing without supporting evidence, its attack on the court's jurisdiction is considered facial, rather than factual, and the court must presume that the allegations of the complaint are true.[31] "Further, the court must then deny the motion if the allegations are sufficient to allege jurisdiction."[32] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."[33]

"It is inappropriate for the court to focus on the merits of the case when considering the issue of standing."[34] "Although the court has wide discretion in handling motions to dismiss, such motions are usually granted sparingly and with caution to ensure that a plaintiff's right to have a claim adjudicated on the merits is not violated."[35]

---

[30] Exhibit 3.

[31] *See, Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2008 U.S. Dist. LEXIS 101240, 6-7 (N.D. Tex. Dec. 11, 2008).

[32] *See, id* at 7.

[33] *See, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Inclusive Cmtys. Project, Inc.* 2008 U.S. Dist. LEXIS 1012240 at 7.

[34] *See, Grant V. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003).

[35] *See, Harrison v. Safeco Insurance Company of America*, 2007 U.S. Dist. LEXIS 34504, 11 (E.D. La. 1995).

**B. At the outset, the Affidavits show the allegations of a concerted effort by Steeg. Rotunda, and the other associations are directly related to Steeg's relationship with RCB to engage in a pattern of illegal debt collection.**

Initially and at a very early stage of this litigation, Sobel explains how Steeg, through conversion of properties by RCB as a developer, manipulates the condominium documents for its own illegal collection practices -- just as alleged in the Complaints.  Sobel's affidavit shows:

- Steeg prepared the condominium documents at The Lofts when the apartments were converted to condominiums.

- Steeg charged excessive fees, interest, and even attorney's fees that it justified through the condominium documents it prepared.

- Steeg strong-armed the Board and improperly influenced the decision for aggressive debt collection, even when the Board told them to cease.

- In the process, RCB paid Steeg the attorney's fees, even when debts were challenged and no judgment had been rendered, then attempted to assess those disputed fees to the condominium owner.

Likewise, in each case where documentation has been located without any discovery, RCB is directly involved.  At Julia Place Condominium Homeowners Association, Inc. ("JPCHA"), RCB keeps the ledgers.  At Rotunda, RCB is the developer, and even relied on Steeg to collect a disputed debt.  At The Lofts, RCB, as documented by Sobel, is directly involved with a pattern of harassment and coercion that ultimately results in Steeg seeking exorbitant debt collection fees.  The same pattern occurs at the other associations, as event by the Affidavit of Patrick Andras.

The result -- condominium ownership results in lesser property rights than the renters who are protected by landlord tenant law.  Reyes represents a class that should be afforded the opportunity to prove such misconduct and end this activity once and for all.

**C. The facts, as deemed true at this stage, warrant the application of the "Juridical Link Doctrine," which renders null Rotunda's argument that Reyes' lacks standing to sue Rotunda.**

Although some courts in other jurisdictions require that at least one class representative sustain an injury directly from each defendant, courts in this circuit and several others have recognized and adopted a special exception to this rule, known as the "Juridical Link Doctrine."[36]  Under this doctrine, a multiple-defendant class action may be maintained, even where the named plaintiff(s) has not sustained a direct injury from <u>each</u> named defendant.  That

_____

[36] *See*, *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (recognizing application of the "Juridical Link Doctrine," however not applied because no representative plaintiff of the class had any direct claim against at least one named defendant); *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 806 F. Supp. 2d 942, 953-54 (W.D. Tex. 2011) (adopting the "Juridical Link Doctrine" to establish Article III standing, "the members of the proposed defendant class are clearly "juridically related in a manner that suggests a single resolution of the dispute would be expeditious."); *Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 465, 2002 U.S. Dist. LEXIS 15990 (S.D. Tex. 2002) (recognizing the "Juridical Link Doctrine as a basis to Article III standing when at least one class representative has a direct injury caused by at least one named defendant.); *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973) (recognizing that if the plaintiffs as a group – named and unnamed – have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise "juridically related in a manner that suggests a single resolution of the dispute would be expeditious," the claim could go forward); *Payton v. County of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) (adopting the "Juridical Link Doctrine" as a class action device entitling plaintiff putative class as a whole (represented by people from less than all counties) to sue all 19 counties, as long as someone in the class was injured by at least one of the county defendants -- the so-called "juridical link" doctrine.  If the counties with whom the named representative did not interact directly were following a common statute, nothing in either the standing doctrine or Fed. R. Civ. P. 23 automatically precluded use of the class action device.); *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838-39 (11th Cir. 1990) (adopting the "Juridical Link Doctrine" to establish Article III standing because all the defendants took part in a similar scheme that was sustained either by a conspiracy or was mandated by a uniform state rule); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423-24 (6th Cir. 1998) (adopting the "Juridical Link Doctrine" to establish Article III standing because all the defendants took part in a similar scheme that was sustained either by a conspiracy or was mandated by a uniform state rule); *Murer v. Montana State Comp. Mut. Ins. Fund*, 257 Mont. 434, 849 P.2d 1036, 1039 (Mont. 1993) (a "juridical link [exists] where the various defendants are related instrumentalities of a single state, such as various law enforcement agencies"); *Weld v. Glaxo Wellcome Inc.*, 434 Mass. 81, 746 N.E.2d 522, 530 (Mass. 2001) (adopting the "Juridical Link Doctrine" against defendant drug companies because the representative plaintiff's injuries and legal theories were the same as those of the class and a single resolution of the dispute would be expeditious); *cf*, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 570 F. Supp. 2d 851, 853-57 (E.D. La. 2008) (not recognizing the "Juridical Link Doctrine" as dicta after the court already determined the representative plaintiffs did not have direct standing because no representative plaintiff maintained a direct injury against any defendant. There was no standing by the class representative therefore no basis for even applying the "Juridical Link Doctrine which requires standing by at least one plaintiff class representative against at least one defendant.); and *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, (W.D. La. 2003) (not recognizing the "Juridical Link Doctrine" as dicta after the court already determined the representative plaintiffs did not have direct standing because no representative plaintiff maintained a direct injury against any defendant. There was no standing by the class representative therefore no basis for even applying the "Juridical Link Doctrine which requires standing by at least one plaintiff class representative against at least one defendant.).

is, once a plaintiff has established standing against one of the named defendants, the presence of a conspiracy and/or concerted action and/or the fact that the claims against the defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious as contemplated, it is not necessary that each named plaintiff have individual standing to sue each named defendant.[37]  Instead, a plaintiff who has standing to sue at least one of the named defendants also "has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants."[38]

This doctrine aims to address circumstances where the "injuries to all plaintiffs" are the result of a "conspiracy or concerted schemes between the defendants" at whose hands the class is deemed to have sustained one common set of injuries, or where "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious."[39]  This doctrine is premised on the notion that the class, not the class representative, is the relevant legal entity for the purposes of Article III standing.[40]

Although the "Juridical Link Doctrine" originally applied only to government defendants, it has been expanded to private actors connected by a common agreement or uniform practice.[41]

In this case, the "Juridical Link Doctrine" applies to the facts presented by Reyes in opposition to Rotunda's facial challenge of Article III standing.   Reyes has sufficiently

---

[37] See, Payton v. County of Kane, 308 F.3d 673, 679 (7th Cir. 2002); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998); Moore v. Comfed Sav. Bank, 908 F.2d 834, 838-39 (11th Cir. 1990).
[38] See, Payton v. County of Kane, 308 F.3d 673, 679 (7th Cir. 2002); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998).
[39] Tex. Med. Providers Performing Abortion Servs. v. Lakey, 806 F. Supp. 2d 942, 953 (W.D. Tex. 2011).
[40] See, id.
[41] Mayo v. Hartford Life Ins. Co., 214 F.R.D. 465, 2002 U.S. Dist. LEXIS 15990 (S.D. Tex. 2002) (recognizing the applicability of the "Juridical Link Doctrine" upon corporate and non-governmental private entities); Moore v. Comfed Sav. Bank, 908 F.2d 834, 838-39 (11th Cir. 1990) (adopting the "Juridical Link Doctrine" against financial entities accused of usury); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423-24 (6th Cir. 1998) (adopting the "Juridical Link Doctrine" against insurance companies); Weld v. Glaxo Wellcome Inc., 434 Mass. 81, 746 N.E.2d 522, 530 (Mass. 2001) (adopting the "Juridical Link Doctrine" against non-governmental private entities).

established at this stage of the proceedings that defendants Steeg and Glass have concocted a scheme or otherwise conspired with JPCHA and the remaining condominium association defendants from the New Orleans area, including Rotunda, to set their respective Condominium Declarations to charge usurious "interest" upon its members in violation of the Louisiana Condominium Act and Louisiana Usury Laws; to send form collection letters on behalf of the named condominium associations, including Rotunda, to its resident owners attempting to collect the usurious and illegally charged "interest" which efforts are in violation of the FDCPA, LUTPA and Louisiana Usury Laws; and have filed liens on behalf of the remaining condominium association defendants, including Rotunda, seeking to wrongfully dispossess condominium unit owners of their property through this concerted conspiracy of the defendants. Essentially, Steeg and the condominium association defendants set late fees and interest so high that no party can ever challenge them.  In the case of Reyes, her challenge of a single late fee has allowed her account to grow to over $4,000.  In the case of Mike Sobel, the dispute lead to charges totaling nearly $42,000.00.[42]  The facts support the application of the "Juridical Link Doctrine" as evidenced by the allegations in the complaint, the form letters attached thereto and the attachments to this memorandum in opposition.

Furthermore, the "Juridical Link Doctrine" would separately apply because the defendants' conduct is juridically related in a manner that suggests a single resolution of the dispute would be expeditious.  For instance, Reyes' maintains identical claims against the defendants, all of which are condominium associations directed by the law firm defendants.  The court's resolution of one claim against one condominium defendant will resolve the same claim against all other condominium defendants.  Specifically, each of the defendants has challenged

---

[42] Exhibit 1.

whether the usury laws apply to condominium assessments.

The "Juridical Link Doctrine" only requires Reyes to establish standing for her claims on behalf of the class against one defendant, thereby creating standing on behalf of the putative class against all named defendants, including Rotunda.[43]  However, Rotunda does not challenge whether Reyes' has standing as against JPCHA.  In fact, it acknowledges that Reyes has standing against JPCHA.  "Albeit Reyes alleges she suffered an injury as a result of the manner in which JPCHA allegedly attempted to collect overdue dues and fees, she cannot and does not allege Rotunda caused or contributed to her injury."[44]  Having failed to challenge Reyes' standing JPCHA, such allegations are deemed true for the purposes of this motion.[45]

Reyes maintains four claims against JPCHA: violation of the Federal Debt Collections Practice Act ("FDCPA"), Louisiana's Usury Laws, Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") and the Louisiana Condominium Act.  In support of Reyes' standing against JPCHA for violations of Louisiana's Condominium Act, the complaint[46] and the attached letters establish injury(s) traceable to JPCHA, including but not limited to wrongfully accelerating usurious late charges and attorney's fees, which are likely redressable by a favorable decision as it is clearly in violation of La. R.S. 9:1123.115.[47]  The complaint,

---

[43] *See*, *Payton v. County of Kane*, 308 F.3d 673, 679 (7th Cir. 2002); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

[44] *See*, (Doc. 118-1) at p. 4, ¶ 1.

[45] *See*, *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2008 U.S. Dist. LEXIS 101240, 6-7 (N.D. Tex. Dec. 11, 2008), *citing Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981) ("because TDHCA filed its motion to dismiss without supporting evidence, its attack on the court's jurisdiction is considered facial, rather than factual, and the court must presume that the allegations of ICP's complaint are true.  Further, the court must deny the motion if the allegations are sufficient to allege jurisdiction."); *see also*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("On a motion to dismiss for lack of standing general factual allegations of injury resulting from the defendant's conduct may suffice because the court presumes that general allegations embrace those specific facts that are necessary to support the claim").

[46] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at exhibit A, B, C, D and at ¶ 5.

[47] *See*, *Ford v. Nylcare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (recognizing that the third element of standing requires that the injury will likely, as opposed to merely speculatively, be redressed by a favorable decision).

attached letters and ledgers, and recent briefs[48] filed by Reyes establish facts sufficient to support an injury by Reyes traceable to JPCHA in violation of Louisiana Usury Laws,[49] FDCPA[50] and LUPTA[51] likely redressable by a favorable decision.  Based upon the detailed allegations, deemed true, in the complaint and additional law cited in Reyes' recently filed briefs, Reyes clearly maintains standing on the four class claims against JPCHA and through the "Juridical Link Doctrine," standing on behalf of the yet certified class.

Although Rotunda's motion does not challenge Article III standing on behalf of the putative class, to the extent it does, the *Amchem* case mandates that class certification issues are logically antecedent to the standing issue for the absent unnamed class members because without certification, there is not yet a certified class to evaluate.[52]  Unlike the *Audler* case and the two Louisiana District Court cases, Reyes has specifically plead sufficient facts supporting her direct standing against JPCHA, Steeg and Glass, which sets her apart from these three cases in which no representative plaintiff maintained direct standing against any defendant.  Rather, Reyes presents facts sufficient to permit this court, at this stage of the proceedings, to extend the "Juridical Link Doctrine," finding standing on behalf of the yet certified class.

If the Court is unwilling to apply the "Juridical Link Doctrine," it should hold this motion in abeyance given Rotunda's admission that it charged at least two resident owners usurious late

---

[48] *See,* (Doc. 112) "Memorandum In Opposition To Julia Place Homeowners Association, Inc.'s Motion To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)"; (Doc. 113) "Memorandum In Opposition To Steeg Law, LLC and Margaret Glass' Motion To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)"; and Doc. (114-1) "Plaintiff's Memorandum In Support Of Motion For Partial Summary Judgment." For the sake of judicial economy, Reyes adopts these recently filed briefs in their entirety as if fully contained herein as they establish in addition to the complaint, the likely favorable redressability of Reyes' injuries by JPCHA in violation of Louisiana Usury Laws, LUPTA and the FDCPA.

[49] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at exhibit A, B, C, D and at ¶¶s 1, 3-4, 36-88, 98-103.

[50] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at exhibit A, B, C, D and at ¶¶s 1, 3-4, 6, 36-103.

[51] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at exhibit A, B, C, D and at ¶¶s 1, 7, 36-88, 104-109.

[52] *See*, A*mchem Products, Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997).

charges, which individuals would have direct standing on behalf of the putative class against Rotunda.  At a minimum, the Court should allow Reyes to conduct minimal discovery to determine the extent of the putative class, and to allow those with direct standing against Rotunda to join in the lawsuit, regardless of whether the class is certified.

**D. Reyes has sufficiently alleged facts supporting a "common series of transactions/occurrences" and "questions of law or fact common to all defendants" thereby requiring dismissal of Rotunda's Rule 20 challenge.**

Lastly, Rotunda offers the unsupported argument that it should be dismissed pursuant to F.R.C.P. 20, claiming it is not properly joined in this lawsuit because "Reyes' claims against it have nothing to do with the claims she asserts against JPCHA."[53]  Further, F.R.C.P. 20 provides that multiple defendants may be joined in a single lawsuit if there is asserted against them jointly, severally, or in the alternative any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all defendants will arise in the lawsuit.[54]  The Eastern District of Louisiana has recognized the transaction and common question requirements prescribed by Rule 20 are not rigid tests, but rather are flexible concepts to be read as broadly as possible whenever doing so is likely to promote judicial economy.[55]  As instructed by the Supreme Court, district courts should take a liberal approach to permissive joinder in the interest of judicial economy.[56]  Here, the allegations in the complaint and the affidavits are sufficient to support the allegations of a common series of transactions and should defeat this motion on its face.

In *Terrebonne Parish Sch. Bd. v. Texaco, Inc.*,[57] defendant argued that it was misjoined

---

[53] *See*, (Doc. 118-1) at p. 6, ¶ 1.
[54] *See*, *Poindexter v. Louisiana Financial Assistance Commission*, 258 F.Supp. 158, 165-66 (E.D. La. 1966).
[55] *See*, Campo v. State Farm Fire & Cas. Co., 2007 U.S. Dist. LEXIS 54757, 3-4 (E.D. La. July 25, 2007).
[56] *See*, *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).
[57] *See*, *Terrebonne* Parish Sch. Bd. v. Texaco, Inc., 1998 U.S. Dist. LEXIS 4623 (E.D. La. Apr. 3, 1998).

because the "same transaction/occurrence" element of the rule supposedly was not satisfied.  The defendants claimed they were separate companies, retained through separate mineral leases, independently drilled separate wells in separate canals at different times and created separate injuries, some of which occurred over 30 years apart.[58]  Despite the fact that the plaintiff did not allege joint, several or an alternative theory, the Eastern District Court found the allegations in plaintiff's complaint suggested that defendants' separate activities could have jointly or severally, though inadvertently, caused plaintiff's injuries.  Citing to the lenient standards for joinder, the Court determined that the plaintiff's separate injuries could have resulted from a "series of transactions or occurrences" by the individual defendants and denied misjoinder.[59]

In this case, Reyes has clearly alleged that a "series of transactions/occurrences" caused damages to herself and to the putative class.  The condominium defendants and Steeg repeatedly charged illegal and usurious interest and late fees to Reyes and the putative class members.  And Reyes has plainly pled at least one "question of law or fact common to all defendants," in the complaint.  For instance, Reyes alleges that at the direction of Steeg and Glass, these defendants conspired to set condominium declarations of the named condominium associations, including Rotunda, to permit charging and collecting of usurious late fees and other usurious interest in violation of Louisiana's Usury Laws.[60]  Rotunda is also tied to Steeg through *Woods*.  RCB is part of the collection process for many of the associations, including Rotunda.  Reyes further

---

[58] *See*, *id* at 2-3, 8.

[59] *See*, *id* at 8-9 (The marshland is of such a porous nature that there is a considerable probability that activities or construction in one area could affect the water level and subsequent land erosion elsewhere -- including the wash-over from one shore to the other. While there is no single transaction joining the defendants there are a "series of transactions or occurrences" which given the nature of the land could easily result in charges of overlapping liability); *See also, Hewitt v. AAA Insurance Co.*, 1999 U.S. Dist. LEXIS 6047, 28 (E.D. La. April 23, 1999) (likewise, the Court believes that while the plaintiffs have not alleged a conspiracy or the like, the alleged pattern of red-lining involved allegedly impacted a group.  The plaintiffs have brought a putative class action against a number of insurers whose actions have resulted in alleged damage to the putative class. The court emphasized that Rule 20 must be interpreted liberally).

[60] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 3, 40-42, 55.

alleges that the condominium associations, including Rotunda, used Steeg and Glass to send form collection letters seeking to collect upon the usurious "interest" implemented by Steeg in their declarations in violation of the FDCPA, Louisiana Condominium Act and LUPTA.[61]  Reyes further pleads that Steeg and/or Glass wrongfully accelerated "usurious interest" charges and on behalf of the condominium associations, including Rotunda, in an attempt to dispossess condominium owners of their property.[62]

Despite the affidavits that support the extensive allegations of Rotunda being involved in this wrongful conduct, Rotunda fails to deny or even address its involvement in the concerted effort to extract illegal late fees, interest and attorneys fees, as alleged by Reyes.  In fact, Rotunda seemingly ignores such allegations and makes general unsupported claims in its motion to dismiss such as "it is clear that as to Rotunda, Reyes' claims against it have nothing to do with the claims she asserts against JPCHA."[63]  Rotunda either has not read or chooses not to acknowledge the detailed and express allegations in the complaint on this issue.  Specifically, Reyes repeatedly alleges that for each element of wrongdoing relative to JPCHA, the other condominium associations have engaged in similar behavior, i.e., the Rotunda, through Steeg, is engaging in the same "series of transactions or occurrences" as JPCHA is against Reyes.  Reyes' complaint meets the first test of permissive joinder.  And Mike Sobel's affidavit reinforces those allegations.

Similarly, Rotunda claims that there are no common questions of law or fact between it and the other named defendants.  Yet, the complaint includes complete separate sections labeled

---

[61] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶¶ 3-4, 36, 40-42, 51.
[62] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 67, 69.
[63] *See*, (Doc. 118-1) at p. 6, ¶ 1.

"Policies and Practices Complained of"[64] and "Class Action Allegations,"[65] which detail all of the common questions of law and fact among the defendants. For instance, paragraph 84 of the complaint says, "there are common questions of law and fact common to the class," and lists the form collection letters sent by Steeg and/or Glass on behalf of the condominium association defendants, including Rotunda.[66] The resolution of these letters and whether and to what extent they violate Louisiana Usury Laws, FDCPA, LUPTA or the Condominium Act is common to all named defendants. And of course, the Rotunda has admitted it charged usurious fees to at least two individuals, which certainly seems to support this connection.

Although the allegations in Reyes' complaint should sufficiently serve to deny Rotunda's Rule 20 challenge, if not, the lenient standard to which a Rule 20 challenge should be assessed warrants this court to deny the challenge for the sake of judicial economy. Before this court are the remaining condominium defendants involved in the conspiracy orchestrated by Steeg. Rotunda has failed to challenge any of facts supporting its involvement in the wrongdoing and therefore permissive joinder is appropriate under the circumstances of this case. Additionally, for the sake of judicial economy, a class action is the superior procedural vehicle to recover the modest damages sustained by some of the putative class members because individual actions would not be judicially efficient (and may well be cost prohibitive), and would probably result in the non-pursuit of the claims.

### III.    CONCLUSION

Reyes has established facts supporting her direct standing to sue defendants JPCHA, Steeg and Glass. By way of the Juridical Link Doctrine, Reyes has also established facts

---

[64] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶¶ 70-80.
[65] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶¶ 81-88.
[66] *See*, Original Complaint (Doc. 1) and First Amended Complaint (Doc. 40) at ¶ 84.

sufficient to establish standing to maintain the class claims against Rotunda.  For these reasons, Rotunda's motion to dismiss for lack of standing should be denied.  Similarly, Reyes has established facts sufficient to meet the permissive joinder test.  In the alternative, if the court is unwilling to apply the Juridical Link Doctrine to the facts presently before the court in opposition to Rotunda's motion to dismiss, it should allow Reyes to conduct minimal discovery on behalf of the putative class to determine the size of the putative class and extent of injuries caused through the defendants' conspiracy, or at least allow notice to be sent to the two individuals identified by Rotunda that have direct standing as a result of being charged usurious late fees.  For the reasons set forth in this memorandum, Rotunda's motion to dismiss should be denied in its entirety and the court should further award any other relief it deems just, proper and equitable.

Respectfully submitted, this 13th day of November, 2012.

NICOLE REYES
PLAINTIFF

BY:  FOWLER RODRIGUEZ VALDES-FAULI

/s/: *John S. Garner*
Todd G. Crawford (20150)
John S. Garner (25314)
Fowler, Rodriguez, Valdes-Fauli
2505 14th Street, Suite 500
Post Office Box 4080 (39502)
Gulfport, MS 39501
Telephone: (228) 822-9340
Facsimile    (228) 822-9343

*Attorneys for Nicole Reyes and FDCPA class action plaintiffs and usurious class action plaintiffs*

24

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of November, 2012, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record.

*/s/ John S. Garner* _____