UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**NICOLE REYES, ET AL.**                                              **CIVIL ACTION**

**VERSUS**                                                                    **NO. 12-2043**

**JULIA PLACE CONDOMINIUMS**                              **SECTION: "C" (5)**
**HOMEOWNERS ASSOCATION, INC.,**
**ET AL.**

**ORDER AND REASONS**[1]

    Before this Court is defendants SteegLaw ("Steeg") and Margaret V. Glass's motion to dismiss all federal and state claims of plaintiff Mike Sobel and all usury, Louisiana Unfair Trade Practices Act, Louisiana Condominium Act, and intentional infliction of emotional distress claims against defendant SteegLaw ("Steeg"). Rec. Doc. 343. Plaintiffs Nicole Reyes and Mike Sobel oppose the motion. Rec. Doc. 355. Having considered the record, the memoranda of counsel, and the law, the Court has determined that the defendants' motion to dismiss is PARTIALLY GRANTED and PARTIALLY DENIED.

**I. BACKGROUND**

    This case is a class action suit arising out of Steeg's debt collection practices on behalf of various condominium associations it represents.[2] Plaintiff Reyes owns a unit in the Julia Place Condominium complex, and the Julia Place Condominium Homeowners Association ("Julia Place") is Steeg's client. Rec. Doc. 100-1 at 1-2. Plaintiff asserts that Steeg drafted the Act of Declaration for Julia Place Condominiums. Rec. Doc. 1 at 17.

---

[1] Cindy Allen, a second-year student at Emory University School of Law, assisted in the preparation of this Order and Reasons.
[2] Steeg maintains that it is "not in the business of collecting debts." Rec. Doc. 343-1 at 1. However, this Court has already decided, "Steeg and Glass are attorneys that engage in debt collection," at least sufficiently so for plaintiff's allegations that defendants are debt collectors under the FDCPA and at this stage. Rec. Doc. 153 at 9.

1

Plaintiff Reyes claims that, though she was current on payments for her monthly assessment to Julia Place, she was charged a late fee of $100 in January 2012. Rec. Doc. 1 at ¶ 4. The late fee itself was over 40% of plaintiff's monthly assessment of $219.13, and plaintiff further alleges that the fee was against Louisiana public policy on its face. *Id*. Plaintiff contends that the late fee then ballooned into an amount owed of $628.34 in less than 45 days due to added interest charges of 18% and attorney's fees of $210. Rec. Doc. 1 at ¶ 3.

Steeg alleges that Reyes had in fact fallen behind in paying her assessments and that, over the course of the three years prior to 2012, her late fees had been waived on several occasions "in an effort to accommodate her financial problems." Rec. Doc. 100-1 at 2. However, the Board of Julia Place was "unwilling to make further exceptions" by 2012. *Id*. On April 17, 2012, defendant Glass sent plaintiff Reyes a notice letter on SteegLaw letterhead. Rec. Doc. 1-1 at 1. The letter states that Steeg represents Julia Place "regarding the collection of unpaid late fees ($100 per moth) for the months of December of 2011, and February, March, and April of 2012, plus interest and attorney's fees." *Id*. It further recites Article XII of the Condominium Declaration, which allows Julia Place to record a privilege against Reyes unit pursuant to Louisiana Revised Statute 9:1123.115 "in the amount of the outstanding late fees, together with interest at a rate of eighteen percent (18%) per annum from the date when due until paid, costs and reasonable attorney's fees." *Id.* The letter then states:

> If the outstanding late fees are not paid within seven (7) days of the mailing of this letter, the enclosed lien will be filed to preserve [Julia Place's] privilege against [Reye's] Unit for the unpaid and accelerated condominium fees, interest, cost, and attorney's fees. [Julia Place] may then elect to recover these amounts by filing suit against [Reyes]. If [Julia Place] is successful in obtaining a judgment against [Reyes], it may choose to utilize the legal remedies of garnishment or seizure of [Reyes's] property. The filing of suit may also result in considerable added expense to

2

>[Reyes] in the form of court costs and attorneys' fees which
>[Reyes] may be obligated to pay.

*Id.* Finally, the letter advises Reyes that "the collection of this debt may fall under the Federal Fair Debt Collection Practices Act [FDCPA]" and unless Reyes disputed the validity of the debt within thirty days, it would be presumed valid. *Id.* at 2. Attached to the letter were a schedule of payments indicating an amount due of $628.34 and Julia Place's claim of privilege against Reyes's unit. *Id*. at 3-5.

Plaintiff Reyes retained counsel to challenge the amount owed. Rec. Doc. 1 at ¶ 5. Plaintiff's counsel indicated to the defendants in a letter dated May 9, 2012 that all debts were disputed and that plaintiff found no "legal and/or factual basis to file a lien and commence debt collection proceedings." Rec. Doc. 1-2. On May 14, 2012, Steeg sent a reply letter to plaintiff Reyes' counsel, explaining the basis for the debt, again reciting Article XII of the Julia Place Condominium Declaration, and enclosing a copy of the relevant portion of said Declaration. Rec. Doc. 1-3.

On June 12, 2012, defendant Steeg sent another notice letter to plaintiff Reyes directly. Rec. Doc. 1-4. This June notice letter is almost identical to the April notice letter (Rec. Doc. 1-1), but the June letter adds that, pursuant to Louisiana Revised Statute 9:1123.115, Julia Place has a right to lien Reyes's unit "for an additional twelve (12) months of assessments for the period from June 1, 2012 through May 31, 2013." *Id.* Unlike the April letter, the June letter concludes: "This communication is from a debt collector." Rec. Doc. 1-4 at 2. The attached schedule of payments indicates that, as of May 21, 2012, Reyes owed Julia Place $1,580.82. *Id*. at 3. The attached claim of privilege, however, indicates that Reyes actually owed $1,361.69; further, because Reyes had "been delinquent in paying her monthly condominium assessments for over three (3) months," Julia Place claimed she also owed "$2,629.56 for accelerated

3

monthly assessments for the next twelve (12) month period." *Id.* at 5. Thus, Julia Place asserted that it "preserved its claim of privilege against [Reyes's unit] in the total amount of $3,991.25" along "with interest in the amount of eighteen percent (18%) per annum from May 21, 2012 until paid, along with the costs, expenses, and reasonable attorney's fees [Julia Place] incurs in collecting the aforementioned amounts." *Id.*

Sometime after June 12, 2012, plaintiff Reyes claims that defendants advised her "she would *not* receive a new access code to the building unless she paid all outstanding fees." Rec. Doc. 1 at 5-6 (emphasis in original). Plaintiff Reyes asserts that she was subsequently "denied…the access code because she disputed the fees" and "retained counsel to do so." *Id.*

Plaintiff filed her complaint with the court on August 9, 2012. After this time, Hurricane Isaac damaged the roof of Julia Place Condominiums. Plaintiff asserts that the roof is a common element and so is covered by defendants' insurance. Rec. Doc. 40 at ¶ 2(a). However, a representative of the Board emailed Reyes on September 12, 2012, advising her "that due to her lawsuit the board will not be inspecting her unit and than [sic] her attorney will be notified of this by [Julia Place's] attorney. Additionally any internal damage should be reported to her insurance company." Rec. Doc. 40-1. Due to this "intentional and willful bad-faith retaliatory acts," plaintiff Reyes claims her unit was left "exposed to water infiltration any time it rains along with the risk of mold infestation" and "increased risk of further damage to her unit and personal property located therein." Rec. Doc. 40 at ¶ 7(a). These problems, plaintiff asserts, have "rendered her unit uninhabitable." *Id.*

Plaintiff Mike Sobel owned a unit at The Lofts Condominiums. Rec. Doc. 168-2 at ¶ 2. Sobel asserts that Steeg drafted the condominium documents for The Lofts. *Id.* at ¶ 4. Sobel received similar letters from Steeg as Reyes did, which described fees owed as "a debt and

4

threatened lawsuits." Rec. Doc. 168-2 at ¶ 6. Sobel claims he offered to settle a debt of $2200 for $1100, but the owner of the condominiums, RCB, rejected this offer "under direction from Steeg." *Id.* at ¶ 7. Eventually, Sobel took his claims against Steeg to court, and by that time, Sobel allegedly owed almost $42,000. *Id.* at ¶ 19. A judge ordered that some of the late fees and attorney's fees within that figure were excessive and required Steeg "to remove more than half of their fees from the demand." *Id.*

Sobel asserts that he faced further harassment. Rec. Doc. 355 at 9. For example, "emails from the Association, under Steeg's direction, frequently called [him] names" and "called for immediate payment to avoid locking [him] out of the unit." *Id.* Services to Sobel's unit were disconnected throughout 2012 and 2013; he alleges that he was also locked out of his unit during that time. *Id.*; Rec. Doc. 355 at 2. Sobel claims that the harassment and name calling (e.g., "deadbeat") continued until his unit was sold through judicial foreclosure. *Id.* at 9. It is Sobel's belief that he lost his unit "as a result of [the] collection practices promoted by Steeg." *Id.*

This case has been through many iterations, and plaintiffs are now on their Third Amended Complaint. Rec. Doc. 325. This complaint added a Louisiana Condominium Act ("LCA") class. All three classes in the suit—the LCA class, the FDCPA class, and usury class— "seek injunctive relief to order the correction of illegal Declarations and By-laws." Plaintiffs assert that Steeg either prepared or amended and enforced the Declarations and By-laws for each condominium's association. *Id.* at 3, 14-15.

Generally, plaintiffs allege that defendants "engages in a scheme to illegally profit" by drafting the Declarations and By-laws in such a way as to authorize "the collection of usurious interest (usually 18% or above)," Rec. Doc. 325 at 4, when "such rates are…against public policy under Louisiana Law," *id.* at 13 (citing La. R.S. 9:3500 and 3501), and contrary to the

5

LCA. *Id.* at 14. Plaintiffs also allege that defendants charged late fees in amounts ("52% to 90% of the principal based upon all individual unit assessments") contrary to Louisiana usury law and the LCA. *Id.* at 4, 13, 14. These interest rates and late fees were "used as the basis to coerce, seek, and collect excessive debts by defendants contrary to the FDCPA," according to plaintiffs *Id.* at 14.

Plaintiffs further assert that some of the individual unit owners would pay the allegedly illegal fees after "threats and filings of liens" without enough notice under the FDCPA, yet the liens were not cancelled in violation of the LCA. *Id.* at 17. Also, plaintiffs claim "defendants manipulated the insurance provisions so they are…contrary to the LCA…Steeg intentionally drafted insurance provisions and definitions of common elements in the Condominium Declarations and By-Laws so that individual unit owners…are denied basic coverage for damage to their units caused by common elements." Rec. Doc. 325 at 17. Finally, plaintiffs allege violations of the Louisiana Unfair Trade Practices Act (LUTPA), La. Rev. Stat. 51:1401 et seq. Rec. Doc. 1.

Defendants have moved to dismiss much of the Third Amended Complaint. Rec. Doc. 343 at 1. Specifically, defendants move to "dismiss all federal and state law claims of plaintiff [Mike] Sobel" and "all state law (usury, Louisiana Unfair Trade Practices Act, Louisiana Condominium Act, and intentional infliction of emotional distress) claims against SteegLaw, leaving only claims under the Fair Debt Collection Practices Act arising from conduct that occurred within the one-year Fair Debt Collection Practices act statute of limitation." *Id.*

## II. STANDARD OF REVIEW

Courts must accept all well-pleaded facts in the complaint as true when considering a motion to dismiss. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d

1045, 1050 (5th Cir. 1982). Such facts are viewed in the light most favorable to the plaintiff. *Id.* However, courts do not accept conclusory allegations as true. *Id*.

For a complaint to be viable, it must contain "sufficient factual matter" to make the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conversely, "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim. *Id.* (citations omitted). The plaintiff must have a "reasonably founded hope" that discovery will reveal relevant evidence, rather than that discovery will simply lead to a plausible cause of action. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 256-7 (5th Cir. 2009) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). In order for a motion to dismiss to succeed, the plaintiff must not be able to prove any "set of facts in support of his claim that would entitle him to relief," *Kaiser*, 677 F.2d at 1050, or it must be apparent that there is an insurmountable bar to relief. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

### III. LAW AND ANALYSIS

**Sobel's Louisiana State Law Claims**

Defendants' argument that this Court should rely on La. R.S. 9:5605 and find that plaintiff Sobel's usury, LUTPA, LCA, and IIED claims are perempted is unpersuasive. La. R.S. 9:5605 governs actions for legal malpractice:

> A. No action for damages against any attorney at law duly
> admitted to practice in this state, any partnership of such attorneys
> at law, or any professional corporation, company, organization,
> association, enterprise, or other commercial business or
> professional combination authorized by the laws of this state to
> engage in the practice of law, whether based upon tort, or breach of
> contract, or otherwise, arising out of an engagement to provide
> legal services shall be brought unless filed in a court of competent
> jurisdiction and proper venue within one year from the date of the
> alleged act, omission, or neglect, or within one year from the date
> that the alleged act, omission, or neglect is discovered or should
> have been discovered; however, even as to actions filed within one

7

> year from the date of such discovery, in all events such actions
> shall be filed at the latest within three years from the date of the
> alleged act, omission, or neglect.

La. Rev. Stat. Ann. § 9:5605. Though Steeg and Glass are attorneys at law who practice in Louisiana, this statute is inapplicable here because plaintiff was not defendants' client. "Section 9:5605 does not apply to actions brought by non-clients for damages arising from acts by an attorney representing the non-client's opponent." *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana, Inc.*, 07-3115, 2009 WL 5174742, at *4 (E.D. La. Dec. 21, 2009) (citing *Broussard v. F.A. Richard & Associates, Inc.,* 732 So.2d 578, 585). Thus, plaintiff's state law claims are not perempted on the basis of La. Rev. Stat. Ann. 9:5605. Accordingly, defendants' motion to dismiss plaintiff Sobel's state law claims is DENIED.

**FDCPA Claims by Sobel Class Members Added Through the Third Amended Complaint**

Plaintiffs generally allege "it is or was the policy of Defendants to encourage Homeowners Associations to seek late fees and other charges that are contrary to public policy and use same to support liens and obtain attorney's fees contrary to the FDCPA" and that defendants use the Declarations and By-Laws to "support illicit debt collection" in violation of the FDCPA. Rec. Doc. 325 at 13, 18. Largely, though, plaintiffs' FDCPA claims center on communications received from defendants. Specifically, the Third Amended Complaint, Rec. Doc. 325, incorporates part of the original Complaint, Rec. Doc. 1, contending that defendants violated the FDCPA by:

> a. Contradicting and overshadowing the validation notice, in violation of 15 U.S.C. §§1692g(a) and e(10);
> b. Falsely representing a remedy available to the creditor, in violation of 15 U.S.C. §1692e(10);
> c. Using false representations or deceptive means in an attempt to collect a debt, in violation of §1692e(10);
> d. Directly contacting the debtor in connection with the collection of a debt after being informed that the debtor is represented by an attorney in connection with

8

> the collection of that debt when the debt collector had knowledge of such attorney's name and address, in violation of 15 U.S.C. §1692c(a)(2); and
> e. Collecting an amount not permitted by law, in violation of 15 U.S.C. §1692c(f)(1) [sic].
> f. Omitting key requirements contained in 15 U.S.C. §1692(g)(a)(4) and (a)(5) regarding how to request a verification, that such request must be in writing, and other information required under the FDCPA.

Rec. Doc. 1 at 29. Claims a-d and f all relate to language in notice or lien letters. *Id.*

Defendants argue that any purported class members would had to have received lien letters within the year preceding April 23, 2014 in order to fall within the FDCPA class, Rec. Doc. 343-1 at 9, because, under 15 U.S.C. § 1692k, an action may only be brought "within one year from the date on which the violation occurs." However, plaintiffs do not allege that any of the class members added through the Third Amended Complaint received such a letter within the relevant time period. Rec. Doc. 325 at 6-12.

At best, plaintiffs have produced an Affidavit of Patrick Andras, Rec. Doc. 325-13, that indicates that "a representative of Steeg Law, LLC sent [him] letters seeking the collection of a debt including condominium assessments, interest, late fees, and attorney's fees" and that a lien was filed on Andras's unit which Andras claims was not cancelled when he paid his debt in full. Rec. Doc. 325-13. This affidavit does not indicate when the letter was received, though, or whether it contained the same or substantially similar language to that of the letters plaintiff Reyes received; thus, plaintiffs' complaint has not born the burden of showing that their right to recovery is above the speculative level within the relevant time period of "one year from the date on which the violation occurs." *Id.* Plaintiffs have also produced a Claim of Privilege against James B. Smith's unit; however, it dates from April 2012, and thus claims about it are time-barred. Rec. Doc. 325-6 at 3-4.

9

This Court agrees with defendants that plaintiffs would have to have received communication from defendants in the year preceding April 23, 2014 in order for claims a-d or f to be viable. Accordingly, in so far as defendants' motion to dismiss the FDCPA claims of class members added through the Third Amended Complaint relates to claims a-d or f and therefore centers on lien letters, defendants' motion is GRANTED.

This Court also agrees with defendants that plaintiff Sobel's FDCPA claims specifically are time-barred. Steeg sent a lien letter to Sobel on July 9, 2008, and filed a lien against Sobel's unit on July 22, 2009. Rec. Doc. 343-1 at 5. That is, both the mailing of the lien letter and the filing of the lien occurred well outside of the one-year period; Sobel's claims arose almost three years before plaintiff Reye's initial complaint and almost five years before Sobel's claims were added in the Third Amended Complaint. Summarily noting that "Sobel's allegations extend into 2012 and 2013" does not suffice to render plaintiff's complaint facially plausible. Rec. Doc. 355 at 2. Plaintiff's argument that ledgers indicate he faced "intimidation and harassment associated with debt collection activity" are unpersuasive in this regard. Rec. Doc. 351-2 at 7. Numbers on a ledger cannot intimidate or harass; at best, they merely indicate that plaintiff Sobel owed money.

In so far as plaintiff argues that Sobel being locked out of his unit is a violation of the FDCPA that is not time-barred, that complaint is properly directed at The Loft's condominium association. This Court has held that Reyes not being granted the new access code was a "complaint against the Condominium Association, not Steeg or Glass." Rec. Doc. 153 at 8. Similarly, Sobel's claims that the locks were changed in order to deny him access to his unit are against the association, not defendants Steeg or Glass. Accordingly, defendants' motion to dismiss plaintiff Sobel's FDCPA claims is GRANTED.

10

Finally, plaintiffs also allege that several of the proposed class members were charged excessive late fees. *See generally*, Rec. Doc. 325 at 6-12. For example, "a resident and/or former resident at Gallery Row Condominiums…paid and/or was assessed a late fee of $200.00 in September 2010, contrary to the FDCPA…." Rec. Doc. 325 at 6, ¶ 18. Steeg and Glass have not challenged this particular claim in their present motion. Therefore, the Court will not address the adequacy of the allegations underlying this claim as they relate to Steeg and Glass.

**Louisiana Usury Laws Claim**

This Court has already held that "Reyes has pleaded sufficient information to allege Steeg and Glass violated Louisiana usury laws in assisting JPCA and other condominium associations in drafting declarations that violate Louisiana usury law in their interest rates and in charging late fees with interest." Rec. Doc. 153 at 11. Defendants still cite to non-binding law to support their position that they cannot be liable under Louisiana usury law without indicating why such cases should persuade this Court. *See, e.g., Wiener v. Bank of King of Prussia*, 358 F. Supp. 684, 691 (E.D. Pa. 1973). Though defendants have supplemented their argument with a couple of citations to Louisiana cases in the motion to dismiss at issue here, these cases are not analogous to the case at hand. *Cf. In Re Gulf States Long Term Acute Care of Covington,* LLC slip copy, 2014 WL 1600373, at *3 (E.D. La. April 21, 2014); *Montalvo v. Sondes*, 93-2813 (La. 5/23/94), 637 So. 2d 127, 130 (concerning a custody battle, not usury law). Defendants are correct that Steeg did not represent the plaintiffs and thus owes no duty to them on that basis. However, Steeg is alleged to have done more than merely represent the condominium associations; Steeg took an active role in drafting and enforcing the Declarations and By-Laws that gave rise to the issues here. Accordingly, defendants' motion to dismiss plaintiffs' Louisiana usury laws claim is DENIED.

**Louisiana Unfair Trade Practice Act**

This Court has already held that "the two letters [sent to Reyes]…did not offend public policy, and therefore were not sent in violation of the LUTPA. The Court withholds judgment on whether drafting the Condominium Declaration or any other allegations violate LUTPA." *Id*. (internal citations omitted). This Court also noted "the determination of whether an act or practice is unfair in a particular case is left to the courts." *Id*. Defendants nonetheless contend that plaintiffs LUTPA claims should be dismissed because no relief could be granted under those laws. Defendants cite to *Coffey v. People's Mortg. & Loan of Shreveport, Inc.*, 408 So. 2d 1153, 1156 (La. Ct. App. 1981) to suggest that plaintiffs will be unable to recover damages even if defendants are found to have charged usurious interest. *Coffey*, 408 So. 2d at 1156 ("Additionally, we have not been referred to a case from any other jurisdiction wherein damages and attorney fees under an Unfair Trade Practices Law were allowed solely because usurious interest was charged, knowingly or unknowingly."). However, defendants' argument is unpersuasive, as LUTPA also provides for injunctive relief. La. Rev. Stat. § 51:1408. Accordingly, defendants' motion to dismiss plaintiffs' LUTPA claims is DENIED.

**Louisiana Condominium Act**

Plaintiff Reyes alleged that she was charged a late fee of $100 in January 2012, which violated the Louisiana Condominium Act, La. R.S. 9:1123.102(11), because it exceeded 40% of her monthly assessment of $219.13. Rec. Doc. 1 at 3. Plaintiff Reyes also alleged generally that defendants Steeg and Glass conspired with the condominium associations to set their respective condominium declarations to charge the members usurious interest in violation of the LCA. Rec. Doc. 127 at 3. For example:

> The Declarations and By-Laws of Julia Place Condominium Association, amended and enforced by Steeg, seek an interest rate of 18% at inception of these

> claims (since amended to 12%) and late fees of $100 (between 33% and 90% of almost all of the individual unit assessments) contrary to the LCA…

Rec. Doc. 325 at 15.

The Third Amended Complaint, Rec. Doc. 325, added an LCA class, seeking "injunctive relief calling for the amendment" of the condominium declarations and by-laws that violate the LCA as well as equitable relief in the form of cancellation of all liens "based upon violations of the FDCPA, LCA and usury law." *Id.* at 17. Plaintiffs further contend that "defendants manipulated the insurance provisions" of the condominium associations' declarations and by-laws such that the insurance provisions "are also contrary to the LCA." *Id.*

> Steeg intentionally drafted insurance provisions and definitions of common elements in the Condominium Declarations and By-Laws so that individual unit owners, like Reyes…previously alleged, are denied basic coverage for damage to their units caused by common elements…As relief, the individual unit owners seek the amendment/correction of the insurance provisions and definition of common elements so that the areas mandated by the LCA are properly covered by the requisite insurance.

*Id.* at 17-18. Plaintiffs also seek attorney's fees under the LCA. *Id.* at 18. Finally, the Third Amended Complaint added plaintiff Sobel as a class representative. *Id.* at 2.

Defendants are correct that the Louisiana Condominium Act (La. Rev. Stat. §9:1123.101 *et seq.*) does not provide a private cause of action in this case. In *Peyton Place*, the court held that "nothing in the [Lousisiana Condominium] Act purports to hold a condominium association liable for damages for wrongfully filing a privilege for unpaid condominium fees." *Peyton Place, Condo. Assoc., Inc. v. Guastella*, 08-365 (La. App. 5 Cir. 5/29/09), 18 So. 3d 132, 153. Plaintiffs' counterargument that La. Rev. Stat. §9:1124.115 facially provides for a private cause of action is inapplicable here.  Said section does provide for "damages, injunctions, or other such remedies as provided by law;" however, it only allows for those forms of relief for the "breach of any obligation imposed on unit owners or the declarant." La. Rev. Stat. §9:1124.115(A).

Defendants are not unit owners or declarants, nor do plaintiffs allege that defendants breached an obligation imposed on unit owners, as defendants do not owe the plaintiffs a duty. Accordingly, Defendants motion to dismiss plaintiffs' LCA claims is GRANTED.

**Intentional Infliction of Emotional Distress**

Plaintiffs have not stated a facially plausible claim for intentional infliction of emotional distress (IIED). Under Louisiana law, a plaintiff must show:

> (1) that the conduct of the defendant was extreme and outrageous;
> (2) that the emotional distress suffered by the plaintiff was severe;
> and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto Co*., 585 So. 2d 1205, 1209 (La. 1991). For conduct to be "extreme and outrageous," it must "go beyond all possible bounds of decency, and…be regarded as atrocious and utterly intolerable in a civilized community." *Id.* That is, a plaintiff must clear a high hurdle in order to recover for IIED, as "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not create liability. *Id*. Generally, IIED claims arise out of workplace relations. *Id.*

Plaintiffs' conclusory allegations that Steeg's conduct was in fact extreme and outrageous do not suffice to state a claim for IIED. Even plaintiff Reyes and Sobel's individual allegations, though more substantive, do not suffice as a claim for relief. Sobel being called a "deadbeat" does not constitute more than a "mere insult." *Id.* To the extent that plaintiff Reyes claims not being granted the new access code and thereby being locked out was one example of extreme and outrageous conduct, this Court has already indicated, "This is a complaint against the Condominium Association, not Steeg or Glass." Rec. Doc. 153 at 8.  Similarly, Reyes claims about her roof not being fixed should be directed at the Association, not Steeg or Glass.

Accordingly,

IT IS ORDERED that the motion to dismiss filed by the defendants is PARTIALLY GRANTED and PARTIALLY DENIED.

New Orleans, Louisiana this 3rd day of July, 2014.

**HELEN G BERRIGAN**
**UNITED STATES DISTRICT JUDGE**