UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICOLE REYES, et al.                                    CIVIL ACTION

VERSUS                                                  NO. 12-2043

JULIA PLACE CONDOMINIUMS                                SECTION: "C" (3)
HOMEOWNERS ASSOCIATION, INC., et al


## ORDER AND REASONS

Before the Court is a Motion to Certify Class by plaintiffs Julia Reyes ("Reyes") and

Mike Sobel ("Sobel"). Rec. Doc. 351. The motion is before the Court on the briefs without oral

argument. Having reviewed the record, memoranda of counsel, and the law, the Court GRANTS

IN PART and DENIES IN PART the motion for the following reasons.

## I. BACKGROUND

Plaintiffs Reyes and Sobel bring this class action lawsuit on behalf of themselves and

other condominium owners. Rec. Doc. 325. They allege that they have been subject to excessive

fines and fees and debt collection practices by the Steeg Law Firm, LLC ("Steeg") and various

Condominium Associations throughout the New Orleans Area that violate the Fair Debt

Collection Practices Act ("FDCPA"), Louisiana's usury law, and the Louisiana Condominium

Act ("LCA"). *Id*. The factual background of this case has been described in greater detail in this

Court's prior orders on February 5, 2013 and July 3, 2014. Rec. Docs. 153, 380.

1

Plaintiff now seeks to certify three classes. The first class consists of condominium owners who have been subject to alleged violations of the FDCPA. Rec. Doc. 351-1 at 1. Plaintiffs claim that Steeg utilizes a standard form collection letter that violates the FDCPA on its face by demanding payment of unpaid assessments within seven days, rather than thirty days as the FDCPA requires. *Id*. at 2. Plaintiffs also claim that Steeg has violated the FDCPA by filing excessive liens on condominium owners' property and failing to timely cancel these liens. *Id*. The second class consists of owners whose condominium associations have charged them rates and late fees exceeding 12% per annum for delinquent payment of assessments in violation of Louisiana's usury law. *Id*. The third class consists of owners whose condominium associations have charged unreasonable late fees in violation of the Louisiana Condominium Act. *Id*. According to plaintiffs, though the fines and fees were leveed by different condominium associations, these practices arose from Steeg's advice and assistance in drafting and amending the condominium associations' bylaws and rules. *Id*. at 4.

## II. LAW AND ANALYSIS

### a. Law

*1. Burden of Proof*

The party seeking class certification bears the burden of demonstrating the appropriateness of certification. *Berger v. Compaq Computer Corp.* 257 F.3d 475, 479, n. 4 (5th Cir. 2001). The decision to certify is within the broad discretion of the court. The party seeking

2

class certification bears the burden of proof. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). A district court may look beyond the pleadings to understand the claims, defenses, relevant facts and applicable substantive law and make a meaningful determination of the certification issues. *Id.*

*2. Rule 23 requirements*

In order to certify a class, plaintiffs must demonstrate that they have met the four prerequisites of Federal Rule of Civil Procedure 23(a). Rule 23(a) requires plaintiffs to show that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs must also show that they meet at least one of the requirements of Rule 23(b). These include that the individual class members would be at risk of receiving "inconsistent or varying adjudications" if their actions were prosecuted separately; that adjudications with respect to individual class members would be dispositive of or substantially impair the interests of other members not parties to the individual adjudications; that final injunctive relief or declaratory relief would be appropriate for the class as a whole; or that common questions of law or fact predominate over other questions, rendering class-wide adjudication superior to other available methods. Plaintiffs claim that each of the three proposed classes meet the requirements of all three categories of Rule 23(b). Rec. Doc. 351-1 at 14.

### b. Discussion

*1. FDCPA Injunctive Relief Class*

Before applying Rule 23's requirements to plaintiffs' proposed classes, the Court will first address the viability of a class seeking injunctive relief under the FDCPA. The defendants argue that injunctive relief is not available under the FDCPA and that, as a result, a class of those seeking injunctive relief cannot be certified under Fed. R. Civ. P. 23(b)(2). Rec. Doc. 425 at 45-46.

This issue is a matter of first impression for the Court. As defendants have acknowledged, there is no case law of precedential value that holds that the injunctive relief is unavailable under the FDCPA. *Id*. However, two federal circuit courts of appeal and numerous other district courts have held that such relief is not available under the FDCPA. *See, e.g.*, *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982); *Bituello v. Mancini*, 684 F. Supp. 2d 760, 766 (E.D. Va. 2010); *Banny v. Onewest Bank, FSB*, Civ. A. 11-172, 2011 WL 3418195 (S.D. Miss. 8/3/2011); *Sibley v. Diversified Collection Servs., Inc.*, Civ.A. 396-CV-0816-, 1998 WL 355492 (N.D. Tex. 6/30/1998).

Furthermore, though the Fifth Circuit has not spoken directly to the availability of equitable relief under the FDCPA, its analysis of a different statute militates towards a finding that the FDCPA provides for only monetary relief. In *Washington v. CSC Credit Servs., Inc.*, the Fifth Circuit analyzed the Fair Credit Reporting Act to determine whether it created a private

4

cause of action for injunctive relief. It found that the FCRA did not create such a right because of features of its drafting. Specifically, the FCRA affirmatively granted power to the Federal Trade Commission to pursue injunctive relief and did not affirmatively grant that right to private litigants, but did expressly give private litigants the ability to obtain damages and other relief. These features "persuasively demonstrate[d] that Congress vested the power to obtain injunctive relief solely with the FTC." 199 F.3d 263, 268 (5th Cir. 2000). Furthermore, the Fifth Circuit supported its analysis by pointing to other courts' use of this same reasoning to deny injunctive relief under the FDCPA. *Id.* at 268 n.4. The Fifth Circuit has also previously noted that "courts uniformly hold that the FDCPA does not authorize equitable relief," though it declined in that case to rule directly on the issue. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n. 39 (5th Cir. 2000). The Fifth Circuit also noted that "the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion. *Id.*

On the other hand, a small number of courts have extended equitable relief to consumers suing under the FDCPA. In *Irwin v. Mascott*, a district court granted declaratory and injunctive relief to plaintiffs who had brought suit under the FDCPA. 112 F.Supp.2d 237 (N.D. Ca. 2000). However, the court specified that such equitable relief was available because in California, the FDCPA violations triggered the California Unfair Business Practices Act, which "adds injunctive relief to Plaintiffs' remedies." *Id*. at 963. Thus, as the court's analysis makes clear, injunctive relief would not have been available under the FDCPA alone. In *Loigman v. Kings Landing Condo. Ass'n*., *Inc.*, a New Jersey state court held that equitable relief was available to

5

condominium owners suing their condominium association and the association's attorney under the FDCPA. 324 N.J. Super. 97 (Ch. Div. 1999). However, that case is not controlling in this jurisdiction and stands in the face of overwhelming case law militating against allowing injunctive relief.

Thus, given the Fifth Circuit's previous pronouncements on the question of injunctive relief under the FDCPA and the near-uniform denial of injunctive relief to other private FDCPA litigants in other jurisdictions, this Court likewise declines to extend injunctive relief in this case. Thus, plaintiffs' motion to certify an FDCPA class for injunctive relief is DENIED.

*2. Rule 23(a): Prerequisites*

*A. Rule 23(a)(1): Numerosity*

Rule 23(a)(1) requires plaintiffs to show that the parties in a proposed class are so numerous that joinder is impractical. As this Court has previously noted, there is no "magic number" that must be reached to satisfy numerosity. *Kreger v. Gen. Steel Corp.*, Civ.A. 07-575, 2010 WL 2902773, *4 (E.D. La. July 19, 2010). The Fifth Circuit, considering a request to certify a class consisting of 33 members, emphasized that "[t]he proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Committee on performance and Expenditure of the State of Mississippi*, 637 F.2d 1014, 1022 (5th Cir. 1981). In considering practicability, a "common sense approach" is appropriate. 1 W. Rubenstein, A. Conte, & H.

6

Newberg, *Newberg on Class Actions*, § 3.3 (2009). Relevant factors include geographic

dispersion of the proposed class members, the ease with which class members may be identified,

the nature of the action, and the size of each plaintiff's claim. *Zeidman v. J. Ray McDermott &*

*Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

**FDCPA monetary relief class**

Plaintiffs contend that there are between 26 to 41 members of this class. Rec. Doc. 351-1

at 21. In their reply brief, they claim to have identified eight additional members based on Steeg's

failure to remove property liens. Rec. Doc. 443 at 10. Plaintiffs argue that the difficulties in

identifying members of this proposed class stem in large part from Steeg's refusal to produce

documents related to its demands for condominium assessments. *Id*. at 18. Of these 26-41

putative members, plaintiffs estimate that ten are unnamed individuals who plaintiffs claim have

outstanding liens based on the review of records at the Civil District Court in Orleans Parish.

Rec. Doc. 351-2 at 4; Rec. Doc. 351-2. Steeg argues that the class is actually smaller because it

improperly includes seven entities that do not qualify as "consumers", and are thus not entitled to

bring suit under the FDCPA. Rec. Doc. 415 at 13-14. Steeg claims that the named plaintiff Mike

Sobel must be excluded because the Court has already dismissed his claims as time-barred. *Id.* at

15. Finally, Steeg claims that five  (5) other individuals must be excluded because their FDCPA

claims have been settled. *Id.* at 17.

The FDCPA limits the term "consumer" to mean only natural persons. 15 U.S.C.

§1692a(5). Steeg asserts that based on this language, only a natural person may bring a lawsuit

under the FDCPA. However, the Court has not found any authority that so narrowly prescribes who may recover under the FDCPA. Indeed, §1692k of the FDCPA provides that a debt collector who violates the act "with respect to any *person* is liable to such *person*. . ." and does not limit liability to natural persons only. 15 U.S.C. §1692k(a) (emphasis added). In other sections of the FDCPA, the term "person" is not limited to natural persons. For instance, a debt collector is defined as a "person." 15 U.S.C. §1692a(6). *See also* Manuel H. Newburger and Barbara M. Barron, *Fair Debt Collection Practice* ¶ 1.02[2] ("[I]t appears that Congress intended that word [person] to have its broadest legal meaning and not be limited to 'natural' persons.") Thus, the Court will count the seven entities that Steeg challenges for the purposes of determining numerosity.

The Court agrees that Sobel must be excluded from the proposed class, since his FDCPA claims were indeed dismissed. Rec. Doc. 380.

The Court will now address whether certain purported class members are barred by previously litigating or settling their claims. Steeg has listed five individuals who it claims have either settled or previously litigated their claims. In support, Steeg has provided correspondence, complaints from prior litigation, and a settlement agreement. Rec. Docs. 415-3, 415-6. However, the Court does not find that these documents show that the individuals are barred from bringing suit under the FDCPA.

Steeg cites to *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009) to assert that these individuals are barred from bringing suit. Rec. Doc. 415 at 16. In that case, the Fifth

8

Circuit states that one of the four elements which must be met for a claim to be barred by *res judicata* is "the same claim or cause of action must be involved in both cases." *Oreck*, 560 F.3d at 401. None of the documents that Steeg has attached show that the previous settlements or litigation concerned violations of the FDCPA. For instance, the petitions against W.S. and L.W. were brought by their respective condominium associations for unpaid fees. They did not deal with alleged actions by Steeg that may have violated the FDCPA. Rec. Doc. 415. Aff. of Nicolle Jene, Ex. 2. Likewise, the settlement between 2434 St. Charles Avenue Condominium Association and E.P. does not discuss or release any potential claims by E.P. against the condominium association under the FDCPA. Because none of the documents indicate that a settlement or judgment has been rendered as to these individuals' FDCPA claims against Steeg, the Court will not exclude them from consideration for numerosity purposes.

In addition, Steeg argues that purported plaintiffs who were not identified in plaintiffs' Third Amended Complaint should be excluded for numerosity purposes. Rec. Doc. 415 at 10. Steeg cites to Fed. R. Civ. P. 10(a), which requires that pleadings must include the names of all parties. The Court finds this argument unavailing. Proposed class actions are routinely allowed to move forward without burdening named plaintiffs with discovering the identity of every potential class member. *See, e.g.*, *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 300 (N.D. Ill. 2008) (plaintiffs are "not required to allege the exact number or identity of the class members").  Thus, the Court will not exclude purported class members on this ground.

Having addressed defendants' numerosity arguments, the Court now applies the relevant

9

numerosity factors. Plaintiffs claim that potential class members are geographically dispersed, though they point only to the addresses of owners charged with late fees and interest from Julia Place. Rec. Doc. 351-1 at 16. Plaintiffs also point to a fear of retaliation amongst some potential class members. *Id.* at 17. Most persuasive is plaintiffs' assertion that because the claims at issue are relatively small, individuals are unlikely to pursue separate actions in the absence of class certification. Rec. Doc. 351-1 at 15. Other courts have found that an average claim size of roughly $2,000 weighs in favor of a finding of impracticability. *See, e.g.*, *Dirks v. Clayton Brokerage Co. of St. Louis Inc.*, 105 F.R.D. 125, 131 (D.C.Minn. 1985). In light of this factor and a potential fear of retaliation, the Court finds the numerosity requirement is met for the FDCPA monetary relief class.

**Usury class**

Plaintiffs claim that approximately 40 putative class members are entitled to monetary relief and 731 are entitled to injunctive relief due to defendants' violations of Louisiana's usury laws. Rec. Doc. 351-1 at 17-18. Defendants challenge these numbers, and assert that in order to have standing to bring a claim under La. R.S. 9:3500, an individual must have actually paid excessive interest. Rec. Doc. 452 at 29-30.

In order to have Article III standing, a plaintiff must adequately establish (1) an injury in fact; (2) causation; and (3) redressability. *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008). Neither party has fully addressed whether the proposed class members who have not paid the allegedly usurious interest satisfy these requirements.

10

Defendants cite *Huddleston v. Bossier Bank & Trust Co.* as authority for the requirement that class members must have paid on a contract providing a usurious rate of interest. Rec. Doc. 425 at 29. However, in that case, the court appears to limit its holding to situations in which a note was usurious on its face due to a "clerical error", and where the holder "neither collected nor intended to collect usurious interest, nor attempted to collect usurious interest. . ." 463 So.2d 1336, 1340 (La. Ct. App. 1984). Here, defendants took steps to collect unpaid fees, and the fees and interest rates are not alleged to have been clerical errors. Accordingly, the parties are ordered to submit supplemental briefing as to the issue of whether the proposed class members from whom late fees and interest were not collected meet the three requirements to establish Article III standing. Specifically, the parties should clarify whether attempts at collection of allegedly usurious rates constitutes an injury in fact for purposes of establishing standing. The Court will defer ruling on class certification for the usury class until such briefing is submitted for its consideration.

**LCA Class**

Plaintiffs claim that the proposed LCA class contains 731 members entitled to injunctive relief, as well as 80 members entitled to monetary relief. Rec. Doc. 351-1 at 18. Defendants aver that plaintiffs have overstated the number of members in the proposed class because the LCA allows condominium associations to charge a greater percentage in fees than would otherwise be allowed under the usury law. Rec. Doc. 425 at 26. Under the LCA, condominium associations may charge up to 30% of the amount of the monthly assessment in late fees. La. R.S.

11

9:1123.102(11). In contrast, the usury law forbids interest rates exceeding 12% per annum. La. R.S. §9:3500(C)(1). The Court finds that this issue goes to the substantive merits of the claim and is thus more appropriately addressed outside the context of class certification. Thus, the Court declines to consider this issue at present.

Defendants also argue that actions under the LCA are subject to a one-year prescriptive period, citing to their discussion of this issue in an earlier brief filed with this court. Rec. Doc. 425 at 26. When determining the appropriate prescriptive period under Louisiana law, courts look to the nature of the duty that has been breached. *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472 (5th Cir. 2002). "The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons." *Carriere v. Jackson Hewitt Tax Service Inc.*, 750 F.Supp.2d 694, 704 (E.D. La. 2010). Duties imposed by statute are regarded as arising in tort, rather than contract. *Id*.

Here, plaintiffs allege that the condominium associations have charged excessive fees and interest in violation of the LCA. Rec. Doc. 351-1 at 1, Ex. B at 1. They do not cite to provisions within the condominium associations' by-laws or declarations that create a duty to charge reasonable fees, nor has the Court found any provisions that create such a duty. Rather, the duty to charge reasonable fees and interests arises out of the LCA. Because the duty that has been allegedly breached is statutory, not personal, the Court finds that the claims of the purported class members seeking monetary relief for violations of the LCA dating back more than a year prior to

the filing of this action have prescribed.

By the Court's estimate, under a one-year prescriptive period, the number of purported class members whose claims have not proscribed is approximately 25. The Court notes that it has not taken into account unnamed unit owners that plaintiffs claim have been charged, but for whom plaintiffs do not provide documentation. While not a large number, the Court is reluctant to deny certification on numerosity grounds for the same reasons discussed in the FDCPA monetary relief section. Here, as with the FDCPA class, the small size of the individual claims presents a significant barrier to individual litigation. Thus, the Court will proceed to the other Rule 23(a) considerations.

In addition, the question of the appropriate prescriptive period for LCA claims is only relevant to those seeking monetary relief under the LCA. It does not affect the claims of the 731 members seeking injunctive relief, since per plaintiffs' allegations–which defendants have not denied–the by-laws and declarations of the condominium associations named in the complaint are still in effect. Therefore, the Court finds numerosity satisfied for both the injunctive and monetary relief classes.

*B. Rule 23(a)(2): Commonality*

Rule 23(a)(2) requires that issues of law or fact are common to the class. The common issue of law or fact must be one whose resolution will "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *M.D. ex rel Stukenberg v.*

*Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (citing *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).[1] Plaintiffs must "demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-mart Stores, Inc.*, 131 S.Ct. at 2551.

**FDCPA monetary relief class**

In plaintiffs' initial complaint and subsequent amended complaints, the FDCPA class is defined as individuals who received letters attached as Exhibits "A" and "D" to the original complaint (or substantially similar letters) during the year prior to the date of filing the action. Rec. Doc. 1 at 24. In their motion for class certification, plaintiffs appear to expand the class definition significantly to encompass a much wider swath of unit owners.[2]

Plaintiffs put forth the following as common issues as to the FDCPA monetary relief class: 1) Is Steeg Law Firm a debt collector within the meaning of the FDCPA?; 2) Do the standard, form letters Steeg sends to condominium owners/occupants to collect assessments violate the FDCPA? Rec. Doc. 351-1 at 22-23.

Defendants counter that this list ignores the "false name" FDCPA claims relating to the

---

[1]Although plaintiffs claim that the bar is low for commonality, the case they cite to has been superceded by the U.S. Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, *supra*. Rec. Doc. 251-1 at 22.

[2]Plaintiffs re-defined the class as those threatened with excessive fees and interest; those who have received correspondence or other documents from Steeg seeking collection of usurious interest and excessive late fees or had their assessments accelerated. Rec. Doc. 351-2 at 1.

condominium associations, and should result in the denial of class certification as to the associations. Rec. Doc. 425 at 34. The Court agrees that plaintiffs have not alleged class-wide issues relating to any defendants other than Steeg under the FDCPA. Thus, certification of the FDCPA monetary relief class for claims against the condominium associations is DENIED.

Steeg challenges plaintiffs' expanded FDCPA class definition because it includes unit owners who allegedly suffered different types of FDCPA violations that are factually distinct. Rec. Doc. 415 at 18-19. According to Steeg, plaintiffs essentially allege three different FDCPA injuries: 1)  receiving correspondence or other documents, 2) being encumbered by liens or privileges, and 3) receiving other harassing communications. *Id*. The Court agrees that the expanded definition of the FDCPA class does not meet the requirements of Rule 23(a)(2). Specifically, plaintiffs have not demonstrated that the class members "have suffered the same injury" and not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc.*, 131 C.Ct. at 2551.

However, the narrow class definition set forth in plaintiffs' complaints does not suffer this deficiency. Rather, the Court's review of the letters provided by plaintiffs in the complaint and as exhibits to this motion reveals that they all contain an identical or near-identical paragraph threatening legal action and additional fees if outstanding late fees are not paid within seven days. Rec. Doc. 1-1 at 1; Rec. Doc. 1-4 at 1; Rec. Doc. 351-2. These similarities, coupled with the fact that all of the letters were drafted by the Steeg Law Firm, persuades the Court that those who received such letters have suffered the same alleged injury.

15

The Court is not swayed by defendants' contention that plaintiffs have not shown that every member of the proposed class received a document from Steeg Law that is the same "in form and content." Rec. Doc. 425 at 34. The case cited to by Steeg, *Byes v. Telecheck Recovery Servs., Inc.* found that although the letters sent to proposed class members were not the same in form and content, that commonality was nevertheless satisfied because all the letters contained common violations of the FDCPA. 173 F.R.D. 421, 424 (E.D. La. 1997). The other cases that Steeg cites to are also unavailing. In *Evon v. Law Offices of Sidney Mickell*, the Ninth Circuit found commonality was satisfied because letters were sent to purported class members' business addresses without their consent, and did not touch on the form or content of the letters. 688 F.3d 1015, 1030 (9th Cir. 2012). In *Henderson v. Eaton* the court clarified that only one common issue needed to be shown to satisfy commonality under the pre-*Walmart v. Dukes* standard. No. 01-138, 2002 WL 10464 (E.D. La. Jan 2, 2002).

Accordingly, the Court finds that only the narrow class definition – consisting of unit owners who received letters identical to or substantially similar to those attached as Exhibits "A" and "D" of the original complaint during the year prior to the filing of the action – satisfies the commonality requirement.

**LCA class**

Plaintiffs list several issues of law common to the LCA class concerning the scope and interpretation of the LCA. Rec. Doc. 351-1 at 23. However, the Court does not find that the determination of these questions would "resolve an issue that is central to the validity of each one

16

of the [class members'] claims in one stroke." *M.D. ex rel Stukenberg*, 675 F.3d at 840. The LCA

provides that condominium associations may levy "reasonable" fines. La. R.S. §9:1123.102. The

question of whether charges made by different condominium associations under different

circumstances is one that requires individualized inquiry. Unlike the FDCPA class, which

received communications containing near-identical language from a single source, the proposed

LCA class alleges violations by eleven different condominium associations that charge different

late fees. Rec. Doc. 351-3 at 1-2. The LCA class also differs from the usury class because

Louisiana's usury law creates a bright-line rule for determining usurious interest rates, rather than

a reasonableness standard. Thus, the Court finds that the LCA class does not meet the

requirement of commonality, and DENIES certification.


   *C. Rule 23(a)(3): Typicality*

   Having denied certification to the LCA classes and the FDCPA injunctive class, and

withholding consideration of the usury class until further briefing, the Court will now discuss the

remaining class certification requirements as they relate to the narrowed FDCPA monetary relief

class. Rule 23(a)(3) requires a finding that the claims of the class representatives are typical of

the claims of the class. Fed.R.Civ.P. 23(a)(3). The "focus is on the general similarity of the

named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom

they purport to represent." *Baricuatro v. Industrial Personnel and Management Services, Inc.*,

2013 WL 6072702, *7 (E.D. La. 2013) (quoting *In re Ford Motor Co. Bronco II Product*

*Liability Litigation*, 177 F.R.D. 360, 366 (E.D. La. 1997)). The typicality requirement is "not demanding." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 911 (E.D. La. 2012) aff'd sub nom. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). "Typicality does not require a complete identity of claims." Rather, if the claims "arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.*

Having dismissed Sobel's FDCPA claims as time-barred, the Court will focus only on whether Reyes meets the typicality requirement. Like the other purported class members, Reyes received a letter from Steeg demanding payment of outstanding late fees within seven days and threatening the filing of a lien against her unit for unpaid fees, interests, costs and attorney's fees. Rec. Doc. 1-1 at 1. Because the crux of plaintiffs' class-wide claim against Steeg stems from letters similar to the one sent to Ms. Reyes and whether the language therein violated the FDCPA, the Court finds that Ms. Reyes satisfies the typicality requirement.

### D. Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Courts have also applied Rule 23(a)(4) to scrutinize the adequacy of the proposed class counsel. William B. Rubenstein, *Newberg on Class Actions* 3:54 (5th ed. 2014). When evaluating the adequacy of the class representative, the inquiry focuses on conflicts of interest between named parties and the class they seek to represent. *Amchem Products, Inc. v.*

18

*Windsor*, 521 U.S. 591, 625-26 (1997). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. Furthermore, the adequacy requirement "mandates an inquiry into the zeal and competence of the representative's counsel. . ." *Horton v. Goose Greek Independent School Dist.*, 690 F.2d 470, 484 (5th Cir. 1982).

Plaintiffs state that John Garner, one of the attorneys for the plaintiff, has experience in handling class action matters, has previously been a successful litigant in a case brought under the FDCPA, and has competently litigated the instant case and secured a partial summary judgment. Rec. Doc. 351-1 at 32. The defendants do not contest counsel's adequacy. Though plaintiffs do not cite to the previous class actions handled by Garner, the Court is nonetheless satisfied that Garner can competently and adequately litigate on behalf of the proposed class members.

Julia Place, in a supplemental brief filed in opposition to the motion for class certification, argues that Reyes is not an adequate representative of her class because her claims are atypical. Specifically, Julia Place points out that Ms. Reyes has alleged that Julia Place refused to provide her with a new building access code, and that unlike other class members, Ms. Reyes failed to maintain proper insurance for common elements and has claimed property damage arising from Hurricane Isaac. Rec. Doc. 420 at 6. The Court finds that these factors do not disqualify Reyes as an adequate representative. Reyes, like other members of the proposed class, has received a letter containing language that may be in violation of the FDCPA from Steeg. Reyes' status as a class representative does not bar her from bringing individual claims.

19

The Fifth Circuit has previously stated that "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen v. Treasure Chest Casino*, LLC, 186 F.3d 620, 625-26 (5th Cir. 1999). The Court does not find that the potential differences cited by defendants between Reyes and the proposed class members create conflicts that would hinder Reyes' ability to protect class interests.

Defendants also posit that the class as a whole should not be certified because of conflicting interests. Defendants claim that a judgment in favor of the class would result in some class members obtaining monetary relief while others who may not have paid excessive fees and interests would receive none. Rec. Doc. 425 at 41. However, the potential for differing damage awards is not fatal to class certification. *See, e.g.*, *Epstein v. Weiss*, 50 F.R.D. 387, 391 (E.D. La. 1970) ("It is now well settled that neither the number of representative parties nor their financial interests is controlling in determining whether the plaintiffs will fairly and adequately protect the interests of their class.").

Because Sobel's FDCPA claims have already been dismissed as time-barred, the Court finds that Sobel is not an adequate representative of the proposed FDCPA monetary relief class. Defendants' remaining objections to a finding of adequacy are not relevant in the context of the narrowed FDCPA monetary relief class. Thus, the Court finds that Reyes and plaintiffs' counsel are adequate representatives of the proposed FDCPA monetary relief class.

20

*3. Rule 23(b)*

Rule 23(b) requires that a proposed class fulfills the requirements of one of the four categories set forth in the rule. Rule 23(b)(1)(A) class may be maintained if prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications. Fed.R.Civ.P. 23(b)(1)(A). This category is "rarely utilized" and "does not cover situations in which multiple plaintiffs sue a single defendant for money damages." Newberg on Class Actions §4:1 (5th ed.). Here, the FDCPA monetary relief class consists of multiple plaintiffs suing a single defendant for money damages. Thus, the Court does not find that the requirements of this type of class action are met.

Rule 23(b)(1)(B), frequently referred to as a "limited fund" class action, is satisfied if an adjudication with respect to an individual class member would be dispositive of the interests of other members, or would substantially impair or impede their ability to protect their interests. Fed.R.Civ.P. 23(b)(1)(B). In such actions, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). The most common type of Rule 23(b)(1)(B) involve those where numerous persons make claims against a fund insufficient to satisfy all claims. *Id*. No allegation has been made that Steeg, the sole defendant for the FDCPA monetary class claims, has insufficient funds to satisfy judgment, should it be rendered in favor of plaintiffs. The Court also does not find that the character or rights claimed or relief awarded would render adjudication by a single class member

dispositive of the interests of absent class members. Indeed, if a single class member were to litigate his or her claims against Steeg individually, the outcome of the case would not influence future lawsuits by other class members any more than would normally be expected between similarly situated plaintiffs bringing separate actions. Thus, the class does not meet the Rule 23(b)(1)(B) requirements.

Class actions under Rule 23(b)(2) are brought when "final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Because the Court now considers certification of only the FDCPA monetary relief class, Rule 23(b)(2) certification is unsuitable since the class does not seek injunctive or declaratory relief.

*A. Rule 23(b)(3)*

Finally, Rule 23(b)(3) certification is appropriate where "questions of law or fact common to members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The predominance requirement under Rule 23(b)(3) is "more demanding" than the commonality requirement. *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). Determining whether predominance exists requires "identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Id*. (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319

22

F.3d 732, 738 (5th Cir. 2003)).

Here, the substantive issue that will control the outcome is whether the letters sent by Steeg violated the FDCPA. Thought the letters are not identical in their entirety, plaintiffs have shown that they all contain identical paragraphs demanding payment within seven days and threatening the filing of liens if payment is not made. Thus, the issue of whether the language shared across these letters violates the FDCPA predominates. Other courts have found the predominance and superiority requirements were met in FDCPA actions where a single debt collector mails similar debt collection letters to proposed class members. *See, e.g.*, *Hazelwood v. Bruck Law Offices SC*, 244 F.R.D. 523, 525 (E.D. Wis. 2007) ("[T]he predominant issue in the case is whether defendant's letter violated the FDCPA. . ."); *Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 364 (E.D.N.Y. 2006) (Finding predominance and superiority in debt collectors' use of standardized form letters to collect debts and common practice of mailing letters to class members); *Alexander v. JBC Legal Group, P.C.*, 237 F.R.D. 628, 632 (Finding predominance and superiority where "[e]ach proposed plaintiff received a collection form letter from Defendants which allegedly violated the FDCPA.") Thus, the Court finds that the requirements of Rule 23(b)(3) are satisfied in this case. Accordingly, the Court certifies the FDCPA monetary relief class.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

certification of the proposed FDCPA injunctive relief class is DENIED,

certification of the proposed FDCPA monetary relief class, as narrowed by this order, is

GRANTED,

certification of the proposed LCA injunctive and monetary relief classes is DENIED.

IT IS FURTHER ORDERED that the parties shall submit supplemental briefing on the issue of

whether the proposed class members from whom late fees and interest were not collected meet

the three requirements to establish Article III standing by January 21, 2015. The Court will defer

consideration of class certification for the usury class until such briefing is submitted for its

consideration.

New Orleans, Louisiana, this 18th day of December 2014.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE