UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICOLE REYES, ET AL                                  CIVIL ACTION

v.                                                   No. 12-2043

JULIA PLACE CONDOMINIUMS, ET AL                      Section "C"

## ORDER AND REASONS

Before the Court are memoranda filed by the parties pursuant the Court's previous Order and Reasons requiring supplemental briefing on whether proposed class members from whom late fees and interest were not collected have Article III standing. Rec. Doc. 464 at 24. Having considered the law, the record, and the arguments of the parties, the Court hereby GRANTS IN PART and DENIES IN PART the Motion for Class Certification (Rec. Doc. 351) as it pertains to certifying a class of individuals claiming harm from violations of Louisiana's usury law.

## I.      Factual and Procedural Background

The Court has recited the background of this case in its previously issued Order and Reasons. Rec. Doc. 464. In brief, plaintiffs Nicole Reyes and Mike Sobel have brought a class action lawsuit on behalf of condominium owners at several properties located in New Orleans, Louisiana against their condominium associations as well as Steeg Law, LLC ("Steeg"). Plaintiffs allege that the defendants have engaged in debt collection practices that violate state and federal law. Rec. Doc. 1.

On May 23, 2014, the plaintiffs filed a motion to certify three classes of condominium owners consisting of those who had been subject to alleged violations of the Fair Debt Collection

1

Practices Act ("FDCPA class"); those who had allegedly been charged fees that violated Louisiana's usury law ("usury class"); and those who were charged late fees allegedly in violation of the Louisiana Condominium Act ("LCA class"). Rec. Doc. 351. On December 18, 2014, the Court issued Order and Reasons certifying a narrowed version of the FDCPA class and denying certification of the LCA class. The Court also deferred ruling on whether certification was appropriate for the proposed usury class because a portion of the proposed class had not actually paid the late fees that had been charged to them, though the outstanding fees had been charged to them. The Court ordered that the parties brief the issue of whether proposed members of the usury class who had not paid late fees had standing to bring a claim. Rec. Doc. 464.

## II.     Law and Analysis

### a.  Standing

Before reaching whether certification is warranted, the Court will examine whether individuals must have paid usurious interest in order to have standing under Louisiana's usury law. To have standing to bring an action, a plaintiff must adequately establish (1) an injury in fact; (2) causation; and (3) redressability. *Spring Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008).

#### 1. Injury in fact

The defendants contend that the proposed class members have not suffered an injury in fact because Louisiana's usury law does not authorize a remedy for injuries other than remittance of the usurious interest. Rec. Doc. 472 at 3. Defendants argue that because these members have not paid interest, the sole remedy of remittal is unavailable to them and they have not suffered an injury cognizable under the usury law. *Id*. Plaintiffs argue that a factual inquiry into standing is premature under the tests set forth by various circuit courts for adjudicating class certification.

2

Rec. Doc. 476 at 2-4. Plaintiffs further argue that even if such an inquiry is necessary at this stage, that Reyes and other similarly situated members have suffered an injury in fact by being "threatened, coerced and/or forced to pay excessive interest and late fees." Rec. Doc. 476 at 6.

The Fifth Circuit has explored the issue of Article III standing in the context of class certification in its opinion, *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). As the Fifth Circuit discussed, several circuit courts have adopted an approach that allows courts to "ignore the absent class members entirely," instead inquiring solely into whether the named plaintiffs possess standing. *In re Deepwater Horizon*, 739 F.3d at 799-800 (citing *Lewis*, 518 U.S. at 395-96). On the other hand, other circuits have held that while trial courts need not require each member of a proposed class to submit evidence of personal standing, the "class must. . . be defined in such a way that anyone within it would have standing." *Id*. at 801 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006). The Fifth Circuit declined to choose which of these tests to apply to class action lawsuits in this jurisdiction, instead finding that the plaintiffs in *In re Deepwater Horizon* satisfied the requirements for standing under both tests. *Id*. at 802.

This Court likewise finds that under both tests, the proposed class possesses Article III standing. Under the first test, the Court looks solely to whether the named plaintiffs, Sobel and Reyes, possess standing to bring suit under the usury law. Plaintiffs have shown evidence that Sobel paid at least a portion of the allegedly usurious late fees charged by The Lofts Condominiums in 2011. Rec. Doc. 168-2. Thus, he has suffered an injury in fact and may bring suit under La R. S. 9:3500(C)(2). In addition, the Court finds that Reyes has suffered an injury in fact. Reyes has alleged payment of $246.09 in overcharges, an amount in excess of what a legal

interest rate would have required her to pay on her monthly assessments. Rec. Doc. 1 at 16-17.

Therefore, both named plaintiffs have shown standing to recover under La R. S. § 9:3500(C)(2).

      The Court also finds that a narrowed version of the proposed class has standing under the

second test, which requires the Court to judge standing based on plaintiffs' class definition.

Plaintiffs define the usury class as:

> … unit owners at each respective condominium association whose Declarations and By-Laws violate the cap on legal interest of 12% and excessive fees that also exceed 12% of the principal. The usury class includes unit owners who have been threatened, coerced and/or forced to pay excessive interest and late fees within the two years before suit was filed.

Rec. Doc. 476 at 6, citing Rec. Doc. 351-1. Certainly, those members who have paid the interest

and late fees have standing to pursue restitution under La. R.S. § 9:3500(C)(2).

      Furthermore, the Court finds that those who have been "threatened" and "coerced" to pay

such fees have suffered an injury in fact, even if these members did not make actual payment. An

injury in fact is "an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders

of Wildlife*, 504 U.S. 555, 560 (1992). Statutes may create a legally protected interest the

invasion of which confers standing. Such standing "is satisfied when the injury asserted by a

plaintiff arguably falls within the zone of interests to be protected or regulated by the statute in

question." *Federal Election Com'n v. Akins*, 524 U.S. 11, 20 (1998) (internal quotations and

citations omitted). Louisiana Revised Statute § 9:3501 provides that "any contract for the

payment of interest in excess of that authorized by law shall result in the forfeiture of the entire

interest so contracted." The Court finds that this provision creates a legally protected interest in

being free from being charged usurious fees, not simply the right to recover payments that had

already been wrongfully paid. Indeed, the Louisiana Supreme Court has also spoken on the issue,

finding:

> Both the trial and the intermediate court held that the unambiguous meaning of the statute is to cause the forfeiture of all interest due on the contract, not just the usurious portion of it and *not just during the period that usurious charges were exacted*. They were correct in so doing.

*Thrift Funds of Baton Rouge, Inc. v. Jones*, 274 So. 2d 150, 155 (La. 1973) (emphasis added).

The state supreme court's reasoning persuades the Court that the scope of the usury statute is not limited to compensating debtors after they have already paid usurious fees, but includes putting an end to the potential for future payments of usurious interest.

Defendants urge that the holding of *Huddleston v. Bossier Bank & Trust Company*, 463 So. 2d 1336 (La. Ct. App. 1984) requires that plaintiffs to have paid usurious interest in order to have standing to bring a claim under the usury law. Rec. Doc. 472 at 4. The Court disagrees. Although in *Huddleston*, the Louisiana Fourth Circuit Appeals Court remarked that it believed the "Supreme Court intended that [the usury] statute to apply to a situation where usurious interest was actually collected," the actual holding of the case is more limited. The court stated: "[W]e hold that where the note became usurious on its face by virtue of a clerical error, and where the *holder neither collected nor intended to collect usurious interest, nor attempted to collect usurious interest*, there is no forfeiture of the legal interest collected." *Huddleston*, 463 So. 2d at 1340 (emphasis added). As this Court has previously remarked, numerous facts distinguish the behavior of the lenders in *Huddleston* from the actions of the condominium associations. Here, the condominium associations' late fees are not a result of a mere clerical error, and the condominium associations made attempts to collect these payments from the named plaintiffs in the form of letters, liens, and charges recorded on unit owners' ledgers. Moreover, although the *Huddleston* opinion argues that the Louisiana Supreme Court's later decision in *Paulat v. Pirello*, 353 So.2d 1307 (La. 1977) modifies *Thrift Funds*, this Court finds

nothing in the *Paulat* opinion to repudiate the state supreme court's interpretation of the usury statute to provide a remedy to prevent future payments of usurious interest.[1]

However, the Court declines to resolve the question of whether actual payment is a prerequisite for bringing suit under La R. S. 9:3501. As will be discussed below, the class must exclude those who did not actually make payments on late fees because they lack commonality with the other members of the proposed class. Thus, the Court need not reach whether these members possess standing.

b. *Standing to pursue injunctive relief*

Defendants also argue that the proposed class's claims for injunctive relief are moot. To have standing to sue for injunctive relief, in addition to meeting the normal requirements of Article III standing, a party must "demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.* 695 F.3d 330, 342 (5th Cir. 2012). The defendants claim that there is no continuing harm or immediate threat of future injury because none of the condominium association boards are currently charging late fees or interest. The defendants have provided affidavits and declarations from each of the condominium associations in support. *See, e.g.*, Rec. Docs. 472-1, 472-2, 472-4, 472-5, 472-7. Plaintiffs rebut that despite the associations' declarations, none have actually changed their governing documents, and thus they retain the discretion to enforce the fees and

---

[1] The Court notes that it previously granted summary judgment in favor of defendant, Rotunda Condominiums Homeowners Association, Inc., based on the fact that plaintiffs had not demonstrated that Rotunda collected any late fees in the prior two years. Rec. Doc. 275. However, the Court's ruling was limited to the remedy of repayment provided by La. R. S. 9:3500(C)(2), and did not touch upon possible forfeiture of future interest due under La. R. S. 9:3501. The earlier Order and Reasons stated:

> The Court finds that Rotunda has demonstrated that it did not collect any late fees during the two-year period at issue here under Louisiana Revised Statute 9:3500(C)(2). Rec. Doc. 227 at 6; Rec. Doc. 153 at 15-16. *Therefore, the Court grants Rotunda's motion for summary judgment on this issue only.*

Rec. Doc. 275 at 7 (emphasis added).

interests at a future date. In addition, plaintiffs have presented ledgers and other records that reflect that various condominium associations continue to record amounts owed for late fees, despite the associations' claims otherwise. Rec. Doc. 476-1, 476-3, 476-4, 476-5. The Court also notes that several of the documents provided by defendants do not unequivocally state that all potentially usurious fees are no longer being collected. For example, the affidavit of William J. Cox establishes that during his tenure as president of his association, he has never charged late penalties above what owners may be required to pay "in accordance with the 'Condominium Documents." Rec. Doc. 425-3 at 3. However, the propriety of the fees that are allowed by the condominium documents is precisely what is at issue in this litigation.

The Court finds that there are issues of fact as to whether the condominium associations are continuing to charge usurious late fees. Moreover, even if such a showing had been made, allowing defendants to moot class claims by electing, at their discretion, to not pursue fees and interests which are still permitted under the associations' bylaws and declarations would still be inappropriate. Allowing such provisions to remain in the associational documents leaves plaintiffs and the proposed class vulnerable to the threat of future charges.

Furthermore, defendants' reliance on the reasoning in *Funeral Consumers Alliance* is unavailing. The relationship between the class and the defendants in that case was of consumers making a one-time purchase, as opposed to property owners in an ongoing binding contractual relationship. The court in *Funeral Consumers Alliance* reasoned that for a future injury, the plaintiffs would have to purchase a specific type of casket from one of two funeral home operators, an outcome that could easily be avoided because the plaintiffs could simply choose to purchase a different kind of casket from a different funeral home operator. 695 F.3d at 343. Here, Reyes and the proposed class continue to own condominiums governed by the defendants and

continue to be legally bound to abide by the provisions of the declarations and bylaws that allow for allegedly usurious fees. Though they may currently be free from accruing new late charges, the associations may resume enforcement of the fees when they choose. Thus, the Court finds that there is a real threat of repeated injury in the future sufficient to bestow standing upon Reyes and the proposed class. While the Court agrees that Sobel, who no longer owns a unit, may lack standing, the Court need not reach this issue because as will be discussed below, he is an inadequate class representative for pursuing injunctive relief.

c.  *Rule 23(a)*

As the Court recited in its earlier Order and Reasons, the plaintiffs bear the burden of proof of showing that the four prerequisites of Fed. R. Civ. Pro. 23(a) are met. Rec. Doc. 464. These requirements are, briefly: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. In addition, plaintiffs must demonstrate that the proposed class satisfies at least one of the requirements of Rule 23(b).

1.  Numerosity

Rule 23(a)(1) requires plaintiffs to show that the proposed class is so numerous that joinder is impractical. The "proper focus" is on whether joinder "is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Committee on Performance and Expenditure of the State of Mississippi*, 637 F.2d 1014, 1022 (5th Cir. 1981). Plaintiffs claim that more than sixty proposed class members have paid usurious fees to the condominium associations. Rec. Doc. 489 at 5. They have attached the accounts and ledgers for these proposed class members in support, some of which have been presented to the Court for *in camera* review in order to protect the class members' identities. *See, e.g.*, Rec. Doc. 476-4 at 7, 11, 20, 25; 476-5. Having reviewed the tenant ledgers, the Court is satisfied that a sufficient

number of condominium owners have made payments on allegedly usurious fees to meet the numerosity requirement. The Court is further persuaded by the fact that many of these proposed class members stand to recover relatively small amounts if they prevail, and that several maintain out-of-state addresses, significantly reducing the likelihood that they would find it feasible to pursue these claims individually. *Zeidman V. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (Geographic dispersion of the proposed class members and size of each plaintiff's claims are relevant to the numerosity determination). Thus, the Court finds that the proposed class is sufficiently numerous to satisfy Rule 23(a)(1).

    2.  Commonality

    Under Rule 23(a)(2), the proposed class must also share common issues of law or fact. Commonality requires that plaintiffs "demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). The Court finds that the class members who are eligible to seek monetary relief for payments made on usurious interest rates satisfy the commonality requirement. They have all suffered the same injury because they allege having suffered economic harm by being forced to make payments on late fees above the amount legally allowed. Defendants object that the usury class should not be certified because the Louisiana Condominium Act may permit a higher rate of 30% to be charged for late fees. Rec. Doc. 425 at 35. However, this argument actually serves to bolster commonality, as this legal issue is one that is common to all proposed class members and its resolution would either move forward or dispose of all their claims at once.

    As for the class members who have not made payments, the Court finds that plaintiffs have not identified common issues of fact or law whose resolution would "resolve an issue that is

central to the validity of each one of the [class members'] claims in one stroke." *M.D. ex rel Stukenberg v. Perry, 675 F.3d 832, 840* (5th Cir. 2012) (citing *Dukes*, 131 S.Ct. at 2551). Plaintiffs have defined the usury class as "unit owners who have been threatened, coerced and/or forced to pay excessive interest and late fees within the two years before suit was filed." Rec. Doc. 476 at 6. Apart from alleging the harm of being forced to pay usurious fees, this definition does not describe the specific threatening or coercive tactics defendants have undertaken. Although plaintiffs allege that many of the members have received harassing communications and have had liens filed on their property, the definition does not limit class membership to those who have suffered these specific forms of harms. Thus, the Court finds that beyond those who have actually paid usurious fees and interest, plaintiffs have not identified common issues of law and fact shared by class members. Therefore, the requirements of commonality are met for those members who have made payments on usurious fees only. The Court notes that members within this narrowed class maintain the ability to pursue the injunctive relief sought by the plaintiffs.

   3.   Typicality

   The Court now turns to whether plaintiffs have shown typicality under Rule 23(a)(3) in the proposed class. To satisfy the typicality requirement, plaintiffs must demonstrate that their legal and remedial theories are similar to those of whom they propose to represent. *In re Ford Motor Co. Bronco II Product Liability Litigation*, 177 F.R.D. 360, 366 (E.D. La. 1997). The Court finds that Sobel and Reyes' claims are typical of the proposed class. Like the proposed class members, they were charged allegedly usurious fees for failing to make timely payment of their condominium fees, actually paid those fees, and now seek to recover those payments. Furthermore, as current condominium owners, Reyes and the proposed class members will pursue similar legal theories in seeking injunctive relief to have the existing bylaws and

10

declarations allowing usurious fees to be invalidated. Although Sobel is not a current condominium owner, the Court finds that he is still able to represent the class insofar as it seeks monetary compensation.

Defendants assert that the "juridical link doctrine" should not apply to the instant action in order to bring in condominium associations with whom the named plaintiffs do not have a direct relationship. Rec. Doc. 425 at 38. The Fifth Circuit has described the juridical link doctrine as providing that if a class as a whole:

> suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise "juridically related in a manner that suggests a single resolution of the dispute would be expeditious," the claim could go forward.

*Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973). The Fifth Circuit declined to reach the question of whether the juridical link doctrine is recognized in this jurisdiction. *Id*. This Court has already held that the juridical link doctrine may be applicable after Rule 23 certification because plaintiffs have alleged that the "condominium associations have engaged in a scheme or conspired with Steeg and Glass to set their respective Condominium Declarations to charge usurious interest upon its members" and "for Steeg and Glass to send form collection letters on behalf of Rotunda and the other named condominium associations." Rec. Doc. 153 at 6-7. The Court declines to reconsider its prior ruling at this juncture.

Defendants also argue that even accepting that a scheme or conspiracy between Steeg and the condominium associations adequately establishes standing under the juridical link doctrine, Carondelet Place and Julia Place should not be brought into the class action because Steeg did not draft their bylaws. Rec. Doc. 425 at 35. Defendants do not cite to evidence to prove this assertion. Nevertheless, even if true, Julia Place would still be properly included in the action

because Reyes has a direct claim upon it as an owner of a condominium at Julia Place. The Court's task is now to determine the appropriateness of class certification, and not to prematurely adjudicate the viability of the class's claims as to each defendant. However, the Court agrees that if Carondelet Place did not use Steeg's services in drafting its declarations and bylaws, then those who own condominiums at Carondelet Place must be excluded from the proposed class. If such a showing can be made, then the class will be winnowed accordingly.

4.   Adequacy

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. Defendants assert that the adequacy requirement is not met because of intraclass conflict. Specifically, they assert that because the class seeks relief from associations of which they themselves are members, the members may ultimately be financially responsible for a judgment against the associations, creating what defendants maintain is an irreconcilable intraclass conflict. Rec. Doc. 425 at 41.

In support of their contention, the defendants point to *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007). However, the Court interprets *Langbecker* differently. In that case, the Fifth Circuit remarked that intraclass conflicts may negate adequacy under Rule 23(a)(4). *Id*. at 315. The court considered a class action suit where current and former employees proposed to represent a class of participants in a company's 401(k) retirement plan in recovering monetary damages and pursuing injunctive relief to restructure the plan. *Id*. at 304. As in this case, any damages sought through the lawsuit would eventually be allocated among the accounts of plan participants. *Id*. The Fifth Circuit found that substantial conflicts existed among the roughly 85,000 class members. First, forty-four thousand plan participants maintained investments in the stock at issue in the litigation, undermining the plaintiffs' claim that the stock

fund was an imprudent investment that should not have been offered in the first place. *Id* at 315. Next, the court found that the participants were affected by a drop in the stock's price in "dramatically different ways," with some making money on their investments while others lost money. *Id*. Even amongst those who lost money, the court pointed out that the determination of the date on which the stock became an imprudent investment would affect how much these members stood to recover in different ways. *Id*. Because of these differing interests and facts, "different legitimate theories. . . [would] have different consequences for class members' recovery." *Id*. While the Fifth Circuit vacated and remanded the trial court's granting of class certification, it remarked that certifying subclasses could potentially remedy these conflicting interests. *Id*. at 316. Thus, contrary to defendants' interpretation of *Langbecker*, the Court reads this case to stand for the proposition that class actions *can* be instituted even when monetary recovery will ultimately be borne by the class members—provided that the theories of recovery that are in the class's best interest are not in conflict with one another.

Taking the Fifth Circuit's holding in *Langbecker* to heart, the Court finds that Sobel cannot adequately represent the class's interests. Because he no longer owns a condominium, he does not share the proposed class's priorities in protecting the members' ownership interest in the condominium. Unlike current owners, Sobel's interest in seeking injunctive relief against the condominium associations will not be tempered by an ongoing financial stake in the properties that the associations govern and manage. Thus, the Court finds that Sobel is not an adequate representative of the class for seeking injunctive relief.

However, this holding does not affect Sobel's ability to represent the class in seeking monetary relief. The usury statute sets clear parameters on the extent of monetary damages, allowing plaintiffs to reclaim only those amounts actually paid in the two years' prior to the

lawsuit's filing. Thus, the Court does not anticipate a risk of conflicting theories of recovery for seeking monetary relief. Moreover, as a current unit owner, Reyes can adequately represent the proposed class in seeking injunctive relief. Therefore, the Court finds that the potential conflicting interests of the proposed class can be resolved by dividing the usury class into two subclasses, one seeking monetary relief and one seeking injunctive relief. Both Sobel and Reyes are adequate representatives of the former class, while Reyes is an adequate representative of the latter class. The Court notes that if, as defendants claim, Julia Place did not draft its governing documents with the aid of Steeg's legal advice, then the "juridical link" between Julia Place and the other defendants is lost for the purposes of seeking injunctive relief, and the injunctive relief class will be limited to members owning units at Julia Place.

    d.  *Rule 23(b)*

      As the Court discussed in its previous Order and Reasons, Rule 23(b) requires the proposed class to fulfill the requirements of one of the four categories set forth in the rule. Rec. Doc. 464 at 21. The Court finds that the proposed class does not fit the requirements of Rule 23(b)(1)(B) because the class does not seek to recover from a "limited fund." The Court finds that certification under Rule 23(b)(2) is appropriate for the injunctive relief class because it seeks an order from the Court declaring the existing bylaws and declarations of the condominium associations to be in violation of the usury law and mandating revision accordingly.

      In addition, the Court finds that the requirements of Rule 23(b)(3) are met for the monetary relief class. Certification under this provision is appropriate when "questions of law or fact common to members of the class predominate over any questions affecting only individual members" and a class action is the superior method for fairly and efficiently adjudicating the controversy. Red.R.Civ.P. 23(b)(3). The common question of law is whether the late fees

charged to the proposed class members violate Lousiana's usury law, and whether the existing provisions of the condominium associations governing documents violate the same law. Although the resolution of the class's claims undoubtedly require individualized determinations of whether the fees were charged and the amount of the fees in relation to the past-due condominium fees, these factual determinations are straightforward, involving the review of ledgers over a finite period of time and simple mathematical calculations to determine the percentage interest that the late fees exacted. Moreover, plaintiffs have shown that the bylaws and declarations of the condominium associations, while varying somewhat, are substantially similar in their provisioning of harsh penalties for late payment of condominium fees and were drafted with the legal advice of Steeg. The Court is convinced that the common issues predominate over the individualized determinations in this case. Thus, the proposed class may be certified under Rule 23(b)(3) as well as Rule 23(b)(2).

Having found that the proposed class satisfies the requirements of both Rule 23(a) and Rule 23(b), the Court hereby GRANTS IN PART and DENIES IN PART the motion for class certification. A class of condominium owners, both past and present, who have paid allegedly usurious late fees and now seek monetary and injunctive relief, shall be certified. This class shall be divided into two subclasses—one seeking monetary relief and another seeking injunctive relief for purported violations of the usury law.

e.  *Other issues*

Both Steeg and Rotunda have filed memoranda requesting that the Court dismiss them from the action. Rec. Docs. 473, 475. However, the Court explicitly asked for briefing as to the issue of standing for the purpose of determining the appropriateness of certifying a usury class, and these requests go beyond the purview of class certification. Dismissal is properly raised in

separate motions to be noticed for hearing and with proper opportunity for the plaintiffs to

respond. Thus, the Court declines to reach whether these parties should be dismissed.

**III.     Conclusion**

For the reasons discussed above, IT IS ORDERED that the motion for class certification

is GRANTED IN PART and DENIED IN PART as to the usury class. The Court certifies a class

of past and present condominium owners who have paid allegedly usurious late fees. The class

shall be divided into two subclasses, one seeking monetary relief and another seeking injunctive

relief for purported violations of the usury law.

New Orleans, Louisiana this 20th day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE