```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA


NICOLE REYES, ET AL.                     CIVIL ACTION

VERSUS                                   NO: 12-2043

JULIA PLACE CONDOMINIUMS                 SECTION: "J"(3)
HOMEOWNERS ASSOCIATION,
INC., ET AL.
```

## ORDER & REASONS

Before the Court is a *Motion to Amend the Usury Class Definition and to Grant Summary Judgment in Favor of Carondelet Place Condominiums Owners Association* **(Rec. Doc. 551)** filed by Defendant, Carondelet Place Condominiums Homeowners Association, Inc. (Carondelet Place), and an opposition thereto **(Rec. Doc. 555)** filed by Plaintiff. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

The facts of this case are set forth in detail in previously issued Orders and Reasons (*see, e.g.*, Rec. Doc. 464); therefore, the Court will only briefly recount them here. This is a class action lawsuit brought by Plaintiffs Nicole Reyes and Mike Sobel on behalf of themselves and other condominium owners at various properties throughout New Orleans against their respective condominium associations, as well as Steeg Law, LLC (Steeg). Plaintiff Patrick Andras was also added to this lawsuit after class

1

certification.[1] Plaintiffs allege that the Defendants have engaged in debt collection practices that violate state and federal law.

On May 23, 2014, Plaintiffs filed a motion to certify three classes of condominium owners. (Rec. Doc. 351.) The first class consists of condominium owners who were subjected to alleged violations of the Fair Debt Collection Practices Act (FDCPA). Plaintiffs allege that Steeg utilizes a standard form collection letter that violates the FDCPA on its face by demanding payment of unpaid assessments within seven days, and that Steeg violated the FDCPA by filing excessive liens on condominium owners' properties. The second class consists of condominium owners who were charged excessive late fees and interest rates for delinquent payment of assessments that allegedly violated Louisiana's usury laws. The third class consists of those who were charged late fees allegedly in violation of the Louisiana Condominium Act (LCA).

On December 18, 2014, the Court certified a FDCPA class limited to claims for monetary relief against Steeg. The Court narrowly defined the FDCPA monetary relief class as "consisting of unit owners who received letters identical or substantially similar to those attached as Exhibits "A" and "D" of the original complaint during the year prior to the filing of the action." (Rec. Doc. 464 at 16.) The Court denied certification of a FDCPA class

---

[1] After the usury class was certified on August 20, 2015, Plaintiffs were granted leave to file their fourth amended complaint. (R. Doc. 553.) This fourth amended complaint added Mr. Andras as a named defendant.

for injunctive relief and denied certification of the FDCPA monetary relief class for claims against the various condominium associations. *Id.* at 6, 15. The Court also denied certification of the LCA class and deferred ruling on whether certification was appropriate for the proposed usury class because a portion of the proposed class had not actually paid the late fees that had been charged to them.

On August 20, 2015, the Court certified a narrowed version of the usury class, divided into two subclasses. Specifically, the Court certified "a class of past and present condominium owners who have paid allegedly usurious late fees. The class shall be divided into two subclasses, one seeking monetary relief and another seeking injunctive relief for purported violations of the usury law." (Rec. Doc. 529, at 16.) The Court did not reach whether members who had not actually paid late fees possess standing because it held that the usury class "must exclude those who did not actually make payments on late fees because they lack commonality with the other members of the proposed class." *Id.* at 6, 9-10. Discussing the typicality requirement for Rule 23 class certification, the Court explained that "the juridical link doctrine may be applicable after Rule 23 certification because plaintiffs have alleged that the 'condominium associations have engaged in a scheme or conspired with Steeg and [Margaret Glass] to set their respective Condominium Declarations to charge

3

usurious interest upon its members' and 'for Steeg and [Margaret Glass] to send form collection letters on behalf of Rotunda and other named condominium associations.'" (Rec. Doc. 529 at 11.) As to Carondelet Place, this Court went further and explained that "if Carondelet Place did not use Steeg's services in drafting its declarations and bylaws, then those who own condominiums at Carondelet Place must be excluded from the proposed [usury] class. If such a showing can be made, then the class will be winnowed accordingly." *Id.* at 12.

On November 11, 2015, Defendant Carondelet Place filed this Motion to Amend the Usury Class Definition and for Summary Judgment. (Rec. Doc. 529.) In short, Carondelet Place argues that it did not use Steeg to draft its declarations and bylaws and that no late fees or interest were ever paid by any unit owner. *Id.* at 3. Consequently, Carondelet Place argues that it should be dismissed from this lawsuit. *Id.* at 4. Plaintiffs argue that factual issues are still present which preclude summary judgment. (Rec. Doc. 555.) Carondelet Place's motion is now before the Court on the briefs.

**PARTIES' ARGUMENTS**

Carondelet Place asks this Court to amend the usury class definition to exclude any past or present condominium owners and to dismiss it from this lawsuit without prejudice. Carondelet Place argues that neither Nicole Reyes, Patrick Andras, nor Mike Sobel

4

have asserted direct causes of action against Carondelet Place, but rather they rely on the "juridical link exception" to Rule 23's typicality and adequacy requirements. (Rec. Doc. 551-1 at 4.) Carondelet Place argues that this Court has already explained that "if Carondelet Place did not use Steeg's services in drafting its declarations and bylaws, then those who own condominiums at Carondelet Place must be excluded from the proposed class. If such a showing can be made, then the class will be winnowed accordingly." *Id.* at 2. Carondelet Place now argues that it has evidence, through the affidavits of Chad B. Ham and Randy Opotowsky, that Steeg did not draft its declarations and bylaws. *Id.* Carondelet Place argues that "[w]ithout the benefit of a certified class against Carondelet Place, Plaintiffs' claims against Carondelet Place [are] nothing more than attempts to assert the injuries of others and therefore must be dismissed for lack of standing." *Id.* at 6. Consequently, Carondelet Place argues that this Court lacks subject matter jurisdiction and therefore should dismiss Plaintiffs' claims without prejudice. *Id.*

Plaintiffs raise several arguments in opposition to Carondelet Place's motion to dismiss. First, Plaintiffs argue that the motion is premature because it is brought before the end of the discovery deadline. (Rec. Doc. 555 at 1.) Second, Plaintiffs argue that Defendant's motion "overlooks the fact that the Steeg Law firm was involved in debt collection activities on behalf of

5

Carondelet Place." *Id.* But Plaintiffs concede that Carondelet Place's declarations and bylaws were not drafted by Steeg. *Id.* Nevertheless, Plaintiffs argue that Carondelet Place and Steeg participated in an illegal scheme to coerce unit owners into paying disputed assessments and attorney's fees by threatening to terminate access to common services. *Id.* at 2-3. Plaintiffs further argue that while Carondelet Place maintains that no late fees or interest were ever paid by unit owners, Carondelet Place collected usurious fees "couched as 'attorney's fees.'" *Id.* at 5. Accordingly, Plaintiffs argue that the evidence presented satisfies the requirement for typicality and the motion to amend the class definition and dismiss Carondelet Place should be denied. *Id.* at 15.

## **LEGAL STANDARD**

Rule 23(a) of the Federal Rules of Civil Procedure presents four requirements in order for one or members of a class to sue, or be sued: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Pro. 23(a). The Fifth Circuit has explained that:

> The test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th. Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)).

## LEGAL STANDARD

**1.   Rule 23 of the Federal Rules of Civil Procedure**

Rule 23(a) of the Federal Rules of Civil Procedure presents four requirements in order for one or members of a class to sue, or be sued: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Fifth Circuit has explained that:

> The test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th. Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). Prior to a final judgment, a court may alter or amend its order granting class certification. Fed. R. Civ. P. 23(c)(1)(c).

**2. Article III Standing**

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014) (citing U.S. Const. art. III, § 2). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing is the determination of whether a specific person is the proper party to bring a matter to the court for adjudication. The United States Supreme Court has declared that "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

In its constitutional dimension, standing concerns justiciability. "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498–99. A

8

federal court's jurisdiction can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action." *Id.* at 499. "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 134 S.Ct. at 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury-in-fact requirement helps to ensure that the plaintiff has a "personal stake in the outcome of the controversy." *Id.* (quoting *Warth*, 422 U.S. at 498). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). Article III standing is a threshold question in every federal court case. As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *See Lujan*, 504 U.S. at 561.

## **DISCUSSION**

This Court denied certification of a FDCPA class for injunctive relief and denied certification of the FDCPA monetary relief class for claims against the various condominium associations. (Rec. Doc. 464.) This Court also denied certification of the LCA class altogether. *Id.* The only claim

Plaintiffs have against Carondelet Place is for alleged violations of Louisiana usury laws. None of the named Plaintiffs, Nicole Reyes, Patrick Andras, and Mike Sobel, have asserted direct causes of action against Carondelet Place. (Rec. Doc. 551-1 at 4.) Ms. Reyes, Mr. Andras, and Mr. Sobel have not and cannot allege direct causes of action against Carondelet Place, because they have never been owners nor members at Carondelet Place.[2] Rather, the named Plaintiffs rely on the juridical link doctrine for their claim against Carondelet Place.

This Court's August 20, 2015 Order, in addressing the Rule 23 typicality requirement and the juridical link doctrine, clearly explained that "if Carondelet Place did not use Steeg's services in drafting its declarations and bylaws, then those who own condominiums at Carondelet Place must be excluded from the proposed [usury] class. If such a showing can be made, then the class will be winnowed accordingly." (Rec. Doc. 529 at 12.) Since that time, Carondelet Place has produced evidence in the form of two affidavits. First is the affidavit of Chad B. Ham which states that "[f]rom 2005 to 2006, [Mr. Ham] assisted 2222 Carondelet, LLC in preparing the declaration, bylaws, articles of incorporation, and initial report for Carondelet Place Condominium Owners

---

[2] Ms. Reyes was or is a condominium owner at the Julia Place Condominium complex. (Rec. Doc. 100-1 at 1-2.) Mr. Sobel was or is a condominium owner at The Lofts Condominiums complex. (Rec. Doc. 127-1 at 1.) Mr. Andras was or is a condominium owner at Magazine Place Condominiums complex. (Rec. Doc. 127-2 at 1.)

10

Association, Inc. . . . The Steeg Law Firm did not participate in any way in the preparation [of these documents.]" (Rec. Doc. 551-3 at 1.) Second is the affidavit of Randy Opotowsky, a lawyer at Steeg, which states "Steeg law also did not draft, prepare, participate or assist with the preparation of Carondelet Place Condominium's" declarations or bylaws. (Rec. Doc. 551-2.)

Plaintiffs argue that "[w]hile Steeg did not prepare the initial declarations, it prepared the necessary Articles of Incorporation Re-Instatement and named itself the registered agent" of Carondelet Place. (Rec. Doc. 555 at 5.) Plaintiffs have not shown that Carondelet used Steeg's services in drafting its declarations and bylaws. Judge Berrigan's August 20, 2015 Order was clear: "[I]f Carondelet Place did not use Steeg's services in drafting its declarations or bylaws, then those who own condominiums at Carondelet Place must be excluded from the proposed class." (Rec. Doc. 529 at 12.) In fact, Plaintiffs admit that "Carondelet Place is correct that its declarations [were] drafted by someone other than Steeg. . . ." *Id.* at 1. Consequently, the class definition must be amended to exclude those who own condominiums at Carondelet Place.

As mentioned, the named Plaintiffs have not and cannot allege direct causes of action against Carondelet Place, because they have never been owners or members at Carondelet Place. In accordance with Judge Berrigan's Order, because those who own

11

condominiums at Carondelet Place must be excluded from the usury class and there are no remaining Plaintiffs with a direct cause of action against Carondelet Place, there is no longer a "juridical link" between Carondelet Place and the other Defendants. *See id*. Thus, the named Plaintiffs cannot avail themselves of the juridical link doctrine as a means of asserting claims on behalf of those who could allege a direct cause of action against Carondelet Place (i.e., those who own or owned a condominium at Carondelet Place). Accordingly, the claims by the named Plaintiffs and the remaining class members against Carondelet Place are nothing more than attempts to assert the injuries of others and therefore must be dismissed. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249-50 (5th Cir. 2008) (dismissing named plaintiff for lack of standing where defendants had no dealings with the named plaintiff); *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 570 F. Supp. 2d 851, 853 (E.D. La. 2008) (dismissing plaintiffs' claims where no added plaintiffs had any dealings with defendants); *See Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 820-28 (W.D. La. 2003) (finding the juridical link inapplicable where no plaintiffs, named or within the class, were able to assert a direct cause of action against the defendants).

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Amend the Usury Class Definition and to Grant Summary Judgment in Favor of Carondelet Place* (Rec. Doc. 551) is **GRANTED**. The usury class definition is hereby AMENDED to exclude those who own condominiums at Carondelet Place.

**IT IS FURTHER ORDERED** that the remaining claims for violations of Louisiana usury law against Defendant Carondelet Place Condominiums Owners Association, Inc. are hereby **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana this 29th day of September, 2016.

*[signature]*
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE