```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA


NICOLE REYES, ET AL.                       CIVIL ACTION

VERSUS                                     NO: 12-2043

JULIA PLACE CONDOMINIUMS                   SECTION: "J"(3)
HOMEOWNERS ASSOCIATION,
INC., ET AL.
```

## ORDER & REASONS

Before the Court is Defendant Parkview Condominium Homeowners Association's (Parkview) Motion Summary Judgment **(R. Doc. 675)**, an opposition thereto filed by Plaintiffs **(R. Doc. 706)**, along with Parkview's Reply. **(R. Doc. 758.)** Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Parkview's Motion for Summary Judgment should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

The facts of this case are set forth in detail in previously issued Orders and Reasons (*see*, *e.g.*, Rec. Doc. 464); therefore, the Court will only briefly recount them here. This is a class action lawsuit brought by Plaintiffs Nicole Reyes and Mike Sobel on behalf of themselves and other condominium owners at various properties throughout New Orleans against their respective condominium associations, as well as Steeg Law, LLC (Steeg). Plaintiff Patrick Andras was also added to this lawsuit after class

certification.[1] Plaintiffs allege that the Defendants have engaged in debt collection practices that violate state and federal law.

On May 23, 2014, Plaintiffs filed a motion to certify three classes of condominium owners. (R. Doc. 351.) The first class consists of condominium owners who were subjected to alleged violations of the Fair Debt Collection Practices Act (FDCPA). Plaintiffs allege that Steeg utilizes a standard form collection letter that violates the FDCPA on its face by demanding payment of unpaid assessments within seven days, and that Steeg violated the FDCPA by filing excessive liens on condominium owners' properties. The second class consists of condominium owners who were charged excessive late fees and interest rates for delinquent payment of assessments that allegedly violated Louisiana's usury laws. The third class consists of those who were charged late fees allegedly in violation of the Louisiana Condominium Act (LCA).

On December 18, 2014, the Court certified a FDCPA class limited to claims for monetary relief against Steeg. The Court narrowly defined the FDCPA monetary relief class as "consisting of unit owners who received letters identical or substantially similar to those attached as Exhibits 'A' and 'D' of the original complaint during the year prior to the filing of the action." (R. Doc. 464 at 16.) The Court denied certification of a FDCPA class

---

[1] After the usury class was certified on August 20, 2015, Plaintiffs were granted leave to file their fourth amended complaint. (R. Doc. 553.) This fourth amended complaint added Mr. Andras as a named defendant.

for injunctive relief and denied certification of the FDCPA monetary relief class for claims against the various condominium associations. *Id.* at 6, 15. The Court also denied certification of the LCA class and deferred ruling on whether certification was appropriate for the proposed usury class because a portion of the proposed class had not actually paid the late fees that had been charged to them.

On August 20, 2015, the Court certified a narrowed version of the usury class, divided into two subclasses. Specifically, the Court certified "a class of past and present condominium owners who have paid allegedly usurious late fees. The class shall be divided into two subclasses, one seeking monetary relief and another seeking injunctive relief for purported violations of the usury law." (R. Doc. 529 at 16.) On August 9, 2016, Parkview filed a motion for summary judgment. (R. Doc. 675.) In short, Parkview argues that "no past or present Parkview condominium owner is member [sic] of the Usury Class and no past or present Parkview condominium owner has been charged with or has paid late fees or interest." *Id.* at 1. Thus, Parkview argues that it should be dismissed from this lawsuit. (R. Doc. 675-1.) In response, Plaintiffs argue that at least one unit owner was charged a late fee at Parkview, and that a lien was recorded with an allegedly usurious fee. (R. Doc. 706 at 1.) Parkview's motion for summary

3

judgment is now before the Court on the briefs and without oral argument.

**PARTIES' ARGUMENTS**

**1.   Parkview's Motion for Summary Judgment**

Parkview argues that summary judgment is appropriate, because there is no genuine issue of material fact that none of its past or present condominium owners have paid an allegedly usurious late fee. (R. Doc. 675-1 at 1-2.) Parkview argues that due to the Court's previous orders, the only potential claim that Plaintiffs may assert against it are under Louisiana usury law. *Id.* at 2. Further, this Court's previous order made clear that the usury class was limited only to those unit owner who paid allegedly usurious fees, not merely charged allegedly usurious fees. *Id.* Parkview has submitted the affidavit of G. Platt Provosty, the President of Parkview from approximately October 2010 to May 2014, and the declaration of Pamela Harrelson, Parkview's President immediately succeeding Mr. Provosty. (R. Docs. 675-2; 675-3.) Mr. Provosty and Ms. Harrelson both state that Parkview has never charged late fees or interest on its association's dues. *See id.* Parkview argues that Plaintiffs have not introduced any evidence that a current or former Parkview unit owner paid an allegedly usurious fee. Consequently, Parkview argues that it is entitled to summary judgment and should be dismissed from this lawsuit.

**2.   Plaintiffs' Motion in Opposition**

Plaintiffs argue that factual issues exist as to whether Parkview unit owners were charged and paid late fees and interest. (R. Doc. 706 at 5.) First, Plaintiffs argue that Parkview "unquestionably sought excessive fees." *Id.* Plaintiffs point to collection letters sent by Parkview to the owner of Parkview Unit 205 in support of this contention. Second, Plaintiffs argue that Parkview has not turned over ledgers of condominium amounts owed and paid for the two years prior to this litigation. *Id.* at 6. Parkview informed Plaintiffs that it was not in possession of that information, because the documents were "inadvertently destroyed prior to the commencement of this litigation. There were no backups of any of the files that were located on the damaged computer and hard drive." *Id*. As a result, Plaintiffs now ask this Court for an adverse inference instruction on the basis of spoliation. *Id.* at 11. Specifically, Plaintiffs argue that the adverse inference should be considered at trial and for purposes of this summary judgment motion. Third, Plaintiffs argue that without the actual ledgers, "it is impossible to actually tell what portions of outstanding balances reflect a late [fee] that was charged." *Id.* at 6. Plaintiffs argue that because it is impossible to determine whether a late fee was paid, "coupled with evidence of spoliation and concrete evidence of late fees charged and a lien recorded," that summary judgment is inappropriate. *Id.* at 7.

5

**3. Parkview's Reply to Plaintiffs' Opposition**

In response to Plaintiffs' opposition, Parkview argues that Plaintiffs have mischaracterized the lien that was filed on Unit 205. (R. Doc. 758.) Parkview argues that the lien and its accompanying ledger do not show that any late fees were charged to the owner of Unit 205. *Id.* Further, while Plaintiffs argue that the overdue assessment on Unit 205 is usurious on its face, Parkview argues that this is not a late charge, but a charge for past condominium dues. *Id.* As to Plaintiffs' spoliation argument, Parkview argues that Plaintiffs never requested Parkview retain its ledgers prior to the commencement of this litigation, and that Parkview was under no duty to retain such ledgers. *Id.* at 2-3. Finally, Parkview reiterates that Plaintiffs have not presented any evidence of a past or present Parkview condominium owner who has *paid* an allegedly usurious late fee. *Id.* at 3-4.

**LEGAL STANDARD**

**1. Spoliation and Adverse Inferences**

Federal district courts have the inherent power, as well as the authority expressly granted under the Federal Rules of Civil Procedure, to impose sanctions where warranted. *See Connelly v. Veterans Admin. Hosp.*, No. 12-2660, 2014 WL 2003093, at *3 (E.D. La. May 15, 2004) (citing cases). Rule 37(b) of the Federal Rules of Civil Procedure provides that for failure "to obey an order to provide or permit discovery," a court "may issue further just

6

orders." Fed. R. Civ. P. 37(b)(2)(A). The actions a court may take include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i),(vi). For a court to impose sanctions under Rule 37(b), however, there must be a violation of a discovery order issued pursuant to Rule 37(a). *Connelly*, 2014 WL 2003093, at *3 (citing 8B Charles Alan Wright, Arthur R. Miller, *et al.* Federal Practice and Procedure § 2282).

Apart from the Federal Rules of Civil Procedure, federal district courts have the inherent power to issue sanctions, but such power "must be exercised 'with restraint and discretion.'" *Id.* (citing *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410-11 (5th Cir. 1993)). As the Fifth Circuit explained in *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." 894 F.2d 696, 702 (5th Cir. 1990). Under the spoliation of evidence doctrine, if evidence is intentionally destroyed, the trial court may exercise its discretion to impose sanctions on the responsible party. *Connelly*, 2014 WL 2003093, at *4 (citing cases). The preferred sanction is "the well-established and long-standing principle of law that a

party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Id.* (citing cases) This adverse inference rule "derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction." *Id.* (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). Accordingly, to restore the prejudiced party, an adverse inference "plac[es] the risk of an erroneous judgment on the party that wrongfully created the risk." *Id.*

   Before a court may provide for an adverse inference in light of the destruction of evidence, "the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed." *Id.* Such a duty "arises when the party has notice that the evidence is relevant to litigation." *Id.* (quoting *Kronisch*, 150 F.3d at 126). Once a court concludes that a party was obliged to preserve the evidence, it must then consider whether the evidence was intentionally destroyed. *Id.* The adverse-inference sanction may not be imposed unless there is evidence of bad faith, and "mere negligence is not enough" to warrant the invocation of the spoliation of evidence doctrine. *Id*. (citing cases). Finally, the court must consider the likely contents of

8

the destroyed evidence. *Id.* (citing *Kronisch*, 150 F.3d at 126). That is, before a court permits the drawing of an adverse inference, there must be "some showing indicating that the destroyed evidence would have been relevant to the contested issue." *Id.*

**2. Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

The issue before the Court is whether, considering the Court's previous rulings and the evidence presented, Parkview is entitled

to judgment as a matter of law dismissing the putative class claims asserted against it. Plaintiffs brought claims under the FDCPA, Louisiana usury law, and the LCA alleging that Parkview engaged in an unlawful scheme with the help of Steeg to collect usurious late fees. None of the named Plaintiffs owned or rented a condominium unit at Parkview. Instead, Plaintiffs seek to represent a class of condominium unit owners at Parkview who paid usurious fees or received form letters from Steeg which allegedly violate the FDCPA.

This Court's previous orders have eliminated all possible avenues of recovery and relief for Plaintiffs against Parkview, except under Louisiana usury law. (R. Doc. 464, at 6, 15, 17; R. Doc. 529 at 16.) Further, this Court's prior order limited the usury class, for purposes of both monetary and injunctive relief, to "past and present condominium owners who have **paid** allegedly usurious late fees." *Id.* at 16 (emphasis added). In short, Plaintiffs' usury claims against Parkview depend on whether any condominium unit owners actually paid allegedly usurious late fees. If Plaintiffs are unable to produce evidence of a past or present Parkview condominium owner who has paid an allegedly usurious late fee, Parkview must be dismissed from this litigation with prejudice.

1.  **Spoliation and Adverse Inference**

First, Plaintiffs argue that they are entitled to an adverse inference due to Parkview's spoliation of relevant evidence. (R.

11

Doc. 706 at 11.) Specifically, Plaintiffs argue that Parkview intentionally destroyed ledgers that would have proven Parkview condominium unit owners paid allegedly usurious late fees. It should be noted, however, that Plaintiffs made a similar request for these ledgers and an adverse inference in a motion to compel before Magistrate Judge Knowles. (R. Doc. 697.) Judge Knowles denied Plaintiffs' motion. (R. Doc. 767.) Because there is no court order requiring Parkview to disclose the requested information, any sanction imposed by this Court would arise from its limited inherent power. *See NASCO*, 894 F.2d at 702.

For the spoliation of evidence doctrine to apply, Plaintiffs must prove two elements: (1) the party having control over the evidence had a duty to preserve the evidence at the time it was destroyed; and (2) the destruction of evidence was intentional. *Garnett v. Pugh*, No. 14-479, 2015 WL 1245672, at *4 (E.D. La. Mar. 18, 2015); *Menges v. Cliffs Drilling Co.*, No. 99-2159, 2000 WL 765082, at *2 (E.D. La. June 12, 2000). "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Ralser v. Winn Dixie Stores, Inc.*, 309 F.R.D. 391, 396 (E.D. La. 2015) (quoting *Premier Dealer Servs., Inc. v. Duhan*, No. 12-1498, 2013 WL 6150602, at *3 (E.D. La. Nov. 22, 2013)). Further, "it is well settled within the Fifth Circuit that an adverse inference drawn from the destruction of records is predicated on bad faith." *Id.* (citing cases).

12

"Culpability is not established by any bright line test, but rather, analyzed on a case-by-case basis." *Id.* (quoting *Premier Dealer Servs.*, 2013 WL 6150602, at *5).

Plaintiffs argue that correspondence with Parkview's counsel demonstrates Parkview destroyed its ledgers after the commencement of this litigation and after such information was requested by Plaintiffs. (R. Doc. 706 at 11.) Plaintiffs claim that they first requested this information on September 25, 2012. *Id.* According to Plaintiffs, in response to this request, "Parkview threatened sanctions . . . but never provided this critical evidence." *Id.* at 11-12. Further, Plaintiffs argue that Parkview did not initially contend that the documents were lost or otherwise unavailable; rather, Parkview simply refused to comply with Plaintiffs' request. *Id.* at 12. Based on these events, Plaintiffs argue that an adverse inference instruction should be considered to defeat Parkview's motion and used at trial."[2] *Id.* at 14.

Parkview argues that it had no duty to retain its ledgers from the two years prior to the commencement of this litigation,

---

[2] Plaintiffs have not provided any authority for the position that an adverse inference may be used by a non-moving party to defeat a motion for summary judgment. *See* R. Doc 706 at 11-14. It appears, however, that although a jury may consider an adverse inference for the purpose of rendering a verdict, an adverse inference, alone, cannot satisfy a non-moving party's burden on summary judgment to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *See* Jay E. Grening & Jeffrey S. Kinsley, Handbook of Federal Civil Discovery & Disclosure, § 16:8 (3d ed.) (citing *Gill v. Arab Bank, PLC*, No. 11-3706, 2012 WL 5395746, at *8 (E.D.N.Y. Nov. 6, 2012). Nevertheless, Plaintiffs' request for an adverse inference is denied.

nor did Parkview have a reasonable belief that it would be involved in this litigation. (R. Doc. 758 at 2-3.) Parkview argues that it is unreasonable to believe that the originally named plaintiff, who was never an owner at Parkview, would sue Parkview and seek ledgers for the two years preceding the litigation. *Id.* at 3. Further, Parkview claims that the computer and hard drive that contained these ledgers was "inadvertently destroyed prior to the commencement of this litigation."

Plaintiffs have failed to produce sufficient evidence proving that Parkview had a duty to preserve the ledgers, that Parkview acted in bad faith in destroying the ledgers, and that the destroyed evidence was relevant to Plaintiffs' claim. Plaintiffs ask this Court to infer that Parkview intentionally, and in bad faith, destroyed its ledgers solely because Parkview did not initially tell Plaintiffs that it had inadvertently destroyed the ledgers prior to litigation. (R. Doc. 706 at 11-12.) This is a leap this court is unwilling to make. Accordingly, the Court finds that Plaintiffs are not entitled to an adverse inference for purposes of this motion nor trial.

**2.   Summary Judgment**

Judge Berrigan's August 20, 2015 Order narrowly defined the usury class for monetary and injunctive relief and limited the class to "past and present condominium owners who have paid allegedly usurious fees." (R. Doc. 529 at 16.) Parkview argues

14

that Plaintiffs have presented no evidence of any past or present Parkview condominium unit owner who has paid an allegedly usurious late fee. Therefore, Plaintiffs must present evidence that at least one past or present condominium owner at Parkview paid an allegedly usurious fee or Parkview must be dismissed.

The only evidence Plaintiffs have presented is a lien recorded against Parkview Unit 205, and copies of collection letters sent by Parkview. (R. Doc. 706-2; R. Doc. 706-6.) In conjunction with this evidence, Plaintiffs rely on the Court supplying an adverse inference due to spoliation, which this Court has denied. Notably absent from Plaintiffs' evidence is anything demonstrating that a past or present condominium unit owner has *paid* an allegedly usurious late fee. Plaintiffs have not produced a ledger, bank statement, nor affidavit demonstrating that any past or present Parkview condominium unit owner has paid an allegedly usurious late fee. Rather, at best, the evidence Plaintiffs presented shows that a past or present condominium unit owner may have been *charged* with a late fee. The absence of such evidence is significant, because it is Plaintiffs' burden to prove that a condominium unit owner at Parkview has paid an allegedly usurious late fee. Consequently, because the only claims Plaintiffs have remaining against Parkview are under Louisiana usury law, and Plaintiffs has not produced any evidence that a past or present Parkview

15

condominium unit owner has paid an allegedly usurious fee, Parkview must be dismissed from this lawsuit.[3]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Parkview's *Motion for Summary Judgment* **(R. Doc. 675)** is **GRANTED**. Plaintiffs' claims against Parkview Condominium Homeowners Association, Inc. are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 7th day of October, 2016

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[3] The "juridical link" doctrine has no application to this issue. As discussed above, there is no genuine issue of fact that no class members exist with causes of action against Parkview.